## Carolyn Turner *v.* Richard Turner
## (14231)

Peters, C. J., Shea, Callahan, Glass and Borden, Js.

Argued May 29—decision released July 18, 1991

*Rochelle Homelson,* assistant attorney general, and *Lucy Potter,* with whom, on the brief, were *Richard Blumenthal,* attorney general, and *Joseph X. Dumond, Jr.,* assistant attorney general, for the appellants (state and plaintiff).

*Andrew M. Dewey,* for the appellee (defendant).

PETERS, C. J. The principal issue in this appeal is whether legislation authorizing the modification of child support orders in light of established child support guidelines applies retrospectively to orders of child support entered before the effective date of the statute. The state of Connecticut, as a party in interest pursuant to General Statutes § 46b-55 (a),[1] moved on February 28, 1990, to modify an order entered in 1988 for the support of the minor children of the plaintiff, Carolyn Turner, and the defendant, Richard Turner, on the ground that the defendant's financial circumstances had substantially changed after the entry of the order. After the legislature enacted Public Acts 1990, No. 90-188 (P.A. 90-188),[2] which authorized the

---

[1] General Statutes § 46b-55 provides in relevant part: "(a) The attorney general shall be and remain a party to any action for dissolution of marriage, legal separation or annulment, and to any proceedings after judgment in such action, if any party to the action, or any child of any party, is receiving or has received aid or care from the state. The attorney general may also be a party to such action for the purpose of establishing, enforcing or modifying an order for support or alimony if any party to the action is receiving support enforcement services pursuant to Title IV-D of the Social Security Act."

[2] Section 1 of Public Acts 1990, No. 90-188, repealed General Statutes § 46b-86 and substituted the following in lieu thereof: "(a) Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support or an order for alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party OR UPON A SHOWING THAT THE FINAL ORDER FOR CHILD SUPPORT SUBSTANTIALLY DEVIATES FROM THE CHILD SUPPORT GUIDELINES ESTABLISHED PUR-

modification of child support orders based on a substantial deviation from the Connecticut child support guidelines (the guidelines), the state enlarged its motion to seek modification on the ground that the 1988 order substantially deviated from the guidelines.[3] The family support magistrate granted certain nonmonetary modifications to the 1988 order but denied the substantial financial modification requested, and the trial court

SUANT TO SECTION 1 OF PUBLIC ACT 89-203, UNLESS THERE WAS A SPECIFIC FINDING ON THE RECORD THAT THE APPLICATION OF THE GUIDELINES WOULD BE INEQUITABLE OR INAPPROPRIATE. IN DETERMINING WHETHER TO MODIFY A CHILD SUPPORT ORDER BASED ON A SUBSTANTIAL DEVIATION FROM SUCH CHILD SUPPORT GUIDELINES THE COURT SHALL CONSIDER THE DIVISION OF REAL AND PERSONAL PROPERTY BETWEEN THE PARTIES SET FORTH IN THE FINAL DECREE AND THE BENEFITS ACCRUING TO THE CHILD AS THE RESULT OF SUCH DIVISION. After the date of judgment, modification may be made upon a showing of such substantial change of circumstances, whether or not such change of circumstances was contemplated at the time of dissolution. By written agreement, stipulation or by decision of the court, those items or circumstances that were contemplated and are not to be changed may be specified in the written agreement, stipulation or decision of the court. This section shall not apply to assignments under section 46b-81 or to any assignment of the estate or a portion thereof of one party to the other party under prior law. NO ORDER FOR PERIODIC PAYMENT OF PERMANENT ALIMONY OR SUPPORT MAY BE SUBJECT TO RETROACTIVE MODIFICATION, EXCEPT THAT THE COURT MAY ORDER MODIFICATION WITH RESPECT TO ANY PERIOD DURING WHICH THERE IS A PENDING MOTION FOR MODIFICATION OF AN ALIMONY OR SUPPORT ORDER FROM THE DATE OF SERVICE OF NOTICE OF SUCH PENDING MOTION UPON THE OPPOSING PARTY PURSUANT TO SECTION 52-50."

[3] The state first asserted the alternative ground of substantial deviation from the child support guidelines at the hearing on its motion to modify on October 19, 1990. Although the magistrate noted that this alternative ground had not been raised in the motion of February 28, 1990, the defendant did not object to the enlargement of the motion on procedural grounds but argued the merits of applying the substantial deviation standard created by Public Acts 1990, No. 90-188 in this case. Counsel for the defendant acknowledged in oral argument in this court that the defendant had therefore waived any procedural objection based on lack of notice.

approved the magistrate's order. The state and the plaintiff filed a joint appeal to the Appellate Court. We transferred the appeal to this court pursuant to Practice Book § 4023, and we reverse.

The relevant facts are undisputed. The trial court, *Hon. Simon Cohen,* state trial referee, dissolved the marriage of the parties on January 25, 1982, and granted custody of the couple's four minor children to the plaintiff. At that time, the court ordered the defendant to pay $5 per week for support of each child, to pay $10 per week to reduce an arrearage of $3369.66 owed to the state for child support payments, and to maintain medical insurance for the children as available through his employer. At the time of the dissolution and at all times since then, the plaintiff and her minor children have been recipients of aid under Connecticut's Aid to Families with Dependent Children (AFDC) program.

On the motion of the state and by stipulated agreement with the defendant, the court, *Covello, J.,* modified the child support order in 1986 to require the defendant to pay a total of $85 per week for the support of the three children who were then still minors and to pay $5 per week to reduce the arrearage owed to the state, which was then calculated to be $1015.73. After the defendant's continued failure to keep up his support payments had led to an order by the court, *Mulcahy, J.,* finding him in contempt, he successfully moved for a modification of the support order on the ground of substantially adverse financial circumstances arising out of his own back injury and out of medical bills he had undertaken to pay for his second wife and his stepdaughter. The modification granted by the court, *Mulcahy, J.,* in 1988 ordered the defendant to pay $60 per week for current support of his three minor children and $5 per week for the arrearage of $8069.63 owed to the state on that date.

Alleging a substantial improvement in the defendant's financial circumstances, the state initiated the present proceeding on February 28, 1990, for an upward modification of the defendant's support obligation. After several continuances granted at the defendant's request, a hearing on the state's motion was held on October 19, 1990. At that hearing the state enlarged its request to include, as an alternative ground for modification, the substantial deviation of the existing order from the Connecticut child support guidelines, pursuant to P.A. 90-188, which had taken effect on October 1, 1990.

After reviewing financial affidavits and hearing testimony regarding the defendant's financial circumstances, the family support magistrate ruled that the defendant's financial circumstances had not changed so substantially as to warrant a modification of the child support order entered in 1988. The magistrate also ruled that P.A. 90-188 was inapplicable in the absence of a clear expression of legislative intent concerning its retroactivity. The magistrate accordingly issued a memorandum of decision that granted only nonmonetary relief, including the incorporation of General Statutes § 46b-84 (c) into the medical insurance provision of the original order and the allocation of the child support payments only to the two youngest children in order to avoid affecting social security disability benefits that the remaining minor child, then 17, was receiving. The trial court, *Steinberg, J.,* approved the magistrate's decision and rendered judgment accordingly.

On appeal, the state and the plaintiff assert that the trial court: (1) abused its discretion in finding that the defendant's financial circumstances had not substantially changed; and (2) mistakenly concluded that the modification provision enacted in P.A. 90-188 should

not be applied to orders entered before the effective date of the act.[4] Because we hold that the trial court should have considered modifying the child support order on the basis of its substantial deviation from the amount set forth in the child support guidelines, we reverse the judgment and remand the case to the trial court for consideration of the factors mandated by the guidelines.

I

We first address the contention that the trial court abused its discretion in finding that the defendant's financial circumstances had not improved so substantially as to warrant a modification of the child support order. The state and the plaintiff assert that because the defendant's net weekly income had increased by approximately 61 percent, while his expenses had increased only by approximately 26.7 percent, over the period between the 1988 order and the 1990 motion for modification, the magistrate abused her discretion in denying the motion based upon a substantial change in circumstances. In light of all the circumstances set forth in the magistrate's memorandum of opinion, we are unpersuaded by this claim.

The scope of our review of this issue is limited. "The well settled standard of review in domestic relations

---

[4] The state and the plaintiff also assert a claim, not raised below, that the trial court violated the plaintiff's right to equal protection of the laws under the fourteenth amendment to the United States constitution and under article first, § 20, of the Connecticut constitution by considering the plaintiff's receipt of welfare benefits as a factor mitigating against an upward modification of the defendant's support obligation. We will ordinarily consider only claims that are distinctly raised and decided in the trial court in the first instance. See Practice Book § 4185. For this reason, and because equal protection claims depend upon classifications that are inherently factbound and often a matter of degree; see *Gunther* v. *Dubno,* 195 Conn. 284, 294, 487 A.2d 1080 (1985); we will not address this claim. The state and the plaintiff will have the opportunity to raise it in the hearing that will be required on remand.

cases is that this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts." *McGuinness* v. *McGuinness,* 185 Conn. 7, 13, 440 A.2d 804 (1981); *Gallo* v. *Gallo,* 184 Conn. 36, 50, 440 A.2d 782 (1981). Our function in reviewing such discretionary decisions is to determine whether the decision of the trial court was "clearly erroneous in view of the evidence and pleadings in the whole record." Practice Book § 4061. In determining whether there has been an abuse of discretion, the ultimate issue is whether the court could reasonably have concluded as it did. *deCossy* v. *deCossy,* 172 Conn. 202, 204–205, 374 A.2d 182 (1977).

In the present case, the state and the plaintiff asked the court to increase the defendant's child support obligation from $60 per week to $175 per week for support of the two minor children who were then fifteen and sixteen years old. The plaintiff was at that time receiving $134 per week in AFDC benefits for support of the two children, and the support increase that was requested would enable her eventually to be removed from welfare. The parties noted that the amount requested was $10 less than that set forth in the child support guidelines based on the defendant's net weekly income, but that the deviation was justified to preserve the plaintiff's eligibility for Title XIX medical insurance (Medicaid), which she needed because her health was poor. The state also sought an order of $25 per week in payment of the defendant's arrearage of $7155.15. The total sought by the state and the plaintiff was therefore $200 per week.

The defendant's financial affidavits and testimony revealed that during the period from 1988 to 1990 his net weekly income, including his wages and a $60 weekly payment of child support from his stepdaugh-

ter's father, had risen from approximately $316[5] to approximately $508, for a net increase of approximately 61 percent. In the same time period, however, his weekly expenses, excluding his child support and arrearage obligations of $65 and arguably unnecessary expenses such as cigarettes, had increased from $418 to approximately $530. The most significant increases were a $60 per week rent increase and a $49[6] weekly expense for psychotherapy for his current wife; other expenses included payments on outstanding medical bills incurred for treatment of his wife and stepdaughter. The state and the plaintiff argued, however, that the amount allowed as necessary expenses should have been further reduced to approximately $429, because $111 of the expenses claimed by the defendant were medical expenses for his stepdaughter, for which her father was legally required to maintain insurance.

In her memorandum of decision rejecting the proposed order for increased support, the magistrate took account of the fact that the defendant, who had regularly been meeting his reduced child support obligations of $65 per week, had described the proposed order as financially disastrous for him. In evaluating that possibility, the magistrate expressed her concern that the plaintiff, who stood to lose her $134 weekly AFDC payments if the requested support increase were ordered, might find herself in a precarious financial situation if the defendant failed to meet his obligation even for one week. Finally, the magistrate noted that although the defendant had managed to "narrow the gap" between

[5] The magistrate's finding that the defendant's 1988 net weekly income was $326.39 incorporated an arithmetical error in the defendant's 1988 financial affidavit. All parties stipulate that the correct figure should have been $316.39.

[6] The magistrate found the psychotherapy expense to be $57 per week. The parties stipulated, however, that the correct figure, when adjusted for annual insurance copayments, was $49 per week.

his income and his expenses between 1988 and 1990, at no time during that period had his weekly income been adequate to meet his allowable weekly expenses. Considering these various factors in their entirety, the magistrate concluded that the plaintiff had not met her burden of proving that the defendant's financial circumstances had so substantially changed as to warrant an order increasing his support obligation.

In the circumstances of this case, we are not persuaded that the trial court abused its discretion in approving the magistrate's order denying an upward modification on the ground of a substantial change in the defendant's financial circumstances. In other cases in which this court has upheld modifications based on substantial increases in the obligor's income, the record has indicated that the obligor's income was more than adequate to meet his own allowable expenses as well as the increased order. See, e.g., *McCann* v. *McCann,* 191 Conn. 447, 450, 464 A.2d 825 (1983); *McGuinness* v. *McGuinness,* supra, 10–12. In this case, even if, as the state and the plaintiff urge, the trial court had deducted from the defendant's allowable expenses the amount he was paying toward his stepdaughter's medical care, his allowable weekly expenses would still have been $429, exclusive of his child support obligation, while his net weekly income, excluding the amount received from his stepdaughter's father for her support, would have been only $448. The addition of his current support obligation of $65 would leave his income short of his essential obligations. We conclude, accordingly, that the trial court did not abuse its discretion in denying the motion to modify the child support order based on a substantial change in the defendant's financial circumstances.

## II

The second claim raised by the state and the plaintiff is that the trial court improperly denied their

request for upward modification of child support on the basis of substantial deviation from the Connecticut child support guidelines, pursuant to the amendment of General Statutes § 46b-86 contained in Public Acts 1990, No. 90-188, § 1. Because pre-1990 legislation already presumptively required initial support orders to comport with statutory support guidelines; Public Acts 1989, No. 89-203;[7] the state and the plaintiff contend that the legislature, in order to have the 1990 act have a practical effect, necessarily must have intended to authorize modification of existing support orders on the basis of substantial deviation from the child support guidelines. We agree.

We acknowledge the accepted principle of statutory construction that a statute affecting substantive rights is to be applied only prospectively unless the legislature clearly and unequivocally expresses its intent that the legislation shall apply retrospectively. *Darak* v. *Darak,* 210 Conn. 462, 467–68, 556 A.2d 145 (1989). Other equally compelling principles of statutory construction, however, require us to construe a statute in a manner that will not thwart its intended purpose or lead to absurd results. *Sutton* v. *Lopes,* 201 Conn. 115, 121, 513 A.2d 139, cert. denied sub nom. *McCarthy* v. *Lopes,* 479 U.S. 964, 107 S. Ct. 466, 93 L. Ed. 2d 410 (1986); *Narel* v. *Liburdi,* 185 Conn. 562, 571, 441 A.2d

---

[7] Public Acts 1989, No. 89-203 was codified as General Statutes § 46b-215b. That section provides in relevant part: "(a) The child support guidelines promulgated pursuant to section 8 of public act 85-548 and any updated guidelines issued pursuant to section 46b-215a shall be considered in all determinations of child support amounts within the state. In all such determinations there shall be a rebuttable presumption that the amount of such awards which resulted from the application of such guidelines is the amount of support to be ordered. A specific finding on the record that the application of the guidelines would be inequitable or inappropriate in a particular case, as determined under criteria established by the commission under section 46b-215a, shall be sufficient to rebut the presumption in such case."

177 (1981), cert. denied, 456 U.S. 928, 102 S. Ct. 1974, 72 L. Ed. 2d 443 (1982). We must avoid a construction that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve. *Peck* v. *Jacquemin,* 196 Conn. 53, 63–64, 491 A.2d 1043 (1985). If there are two possible interpretations of a statute, we will adopt the more reasonable construction over one that is unreasonable. *State* v. *Uretek, Inc.,* 207 Conn. 706, 719, 543 A.2d 709 (1988); *State* v. *Parmalee,* 197 Conn. 158, 165, 496 A.2d 186 (1985). We presume that the legislature had a purpose for each sentence, clause or phrase in a legislative enactment, and that it did not intend to enact meaningless provisions. *Zichichi* v. *Middlesex Memorial Hospital,* 204 Conn. 399, 407, 528 A.2d 805 (1987).

Because a purely prospective application of the substantial deviation provision of P.A. 90-188 appears to be lacking in purpose, we look to the history of its enactment, to the mischief it was designed to remedy, and to the underlying policy it was intended to serve, to determine what purposes the legislature sought to achieve. Those purposes are best understood in the context of developments in the federal law regarding child support in the 1980s and in the context of other developments in the child support law of Connecticut.

Since 1984, the United States Congress has actively encouraged states to take measures to assure that children receive adequate financial support from their parents, thereby reducing governmental expenditures for support of children. The Child Support Enforcement Amendments of 1984, enacted as Public Law 98-378 and codified at 42 U.S.C. § 666 et seq., amended part D of title IV of the Social Security Act to require that states establish procedures to improve the effectiveness of child support enforcement (IV-D) programs.[8]

---

[8] The Child Support Enforcement Amendments of 1984 required the states to establish, inter alia, statutory procedures for withholding from

In those amendments, Congress conditioned the states' receipt of federal funds for AFDC programs and for IV-D programs upon compliance with these requirements. Among the requirements was a provision directing states to establish, by law or by judicial or administrative action, guidelines for child support award amounts that would be available to, but not binding upon, judges who had the authority to enter child support orders. 42 U.S.C. § 667 (a). Such guidelines were intended to provide reliable benchmarks for use in quasi-judicial proceedings, to expedite awards of child support, and to guide courts to more equitable awards in order to address the "feminization of poverty" resulting from consistent underestimates of the cost of rearing children by increasing the average level of awards. See, e.g., R. D. Thompson & S. F. Paikin, "Formulas and Guidelines for Support," 36 Juv. & Fam. Ct. J. 33 (1985).

Four years later, Congress enacted the Family Support Act of 1988 to increase the responsibility of the states to assist all families, including those who do not receive welfare assistance, to establish, modify and enforce support obligations. Public Law 100-485, codified at 42 U.S.C. § 666 et seq. Section 103 (a) of the 1988 act required the states to create a rebuttable presumption that the amounts recommended in the child support guidelines are the correct amounts to be awarded. Section 103 (c) of the act further required that the states establish a procedure for "the periodic review and adjustment of child support orders *being enforced* under this part." (Emphasis added.)

As the state and the plaintiff argue, the natural and plain meaning of the reference in § 103 (c) of the Family

income amounts payable as support, for the expedited establishment of paternity, for imposing liens against real and personal property for amounts of overdue support, and for reporting overdue support to credit agencies. Public Law 98-378, § 466 (a).

Support Act to "orders being enforced" encompasses all support orders currently under the jurisdiction of the courts of the state. Periodic reviews and adjustments of support orders were intended to create a mechanism by which orders entered before the promulgation of a state's child support guidelines could be brought up to levels comparable to those entered after the guidelines took effect. Without such a mechanism, full implementation of the goals served by promulgating guidelines would be delayed for many years. The grandfathering of pre-guidelines orders would frustrate the congressional intent to have parents, rather than state and federal governments, assume the financial responsibility for support of their children to the best of their ability.

The Connecticut legislature enacted P.A. 90-188 in direct response to the federal mandate expressed in § 103 (c) of the Family Support Act. See 33 S. Proc., Pt. 9, 1990 Sess., p. 2703, remarks of Senator Richard Blumenthal; see also Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1990 Sess., p. 422, testimony of Attorney General Clarine Nardi Riddle. In reporting the favorable recommendation of the Joint Standing Committee on the Judiciary, Senator Blumenthal supported the enactment to authorize judges to determine whether "over the passage of time there has been a substantial deviation in particular instances from what the guidelines would have required . . . ." 33 S. Proc., Pt. 9, 1990 Sess., pp. 2703–2704, remarks of Senator Richard Blumenthal.

The legislative history of the enactment of P.A. 90-188 indicates that several legislators expressed concern about the possibility that modification of support orders might retroactively create automatic arrearages. See, e.g., 33 S. Proc., Pt. 9, 1990 Sess., p. 2705, remarks of Senator Thomas F. Upson. To address this

concern, § 1 of P.A. 90-188 states that "[n]o order for periodic payment of permanent alimony or support may be subject to retroactive modification, except that the court may order modification with respect to any period during which there is a pending motion for modification of an alimony or support order from the date of service of notice of such pending motion upon the opposing party pursuant to section 52-50." We construe this language as making a distinction between, on the one hand, an impermissible retroactive modification that would create an arrearage dating back to the time at which the trial court determined that a substantial deviation had occurred, and, on the other hand, a permissible retrospective application of the statute that would authorize the court to modify, for the future, orders entered prior to the act's effective date to bring them up to the level established by the present guidelines.[9] By limiting retroactivity to the period during which a motion for modification was pending, the legislature preserved the due process rights of individual obligors to notice of their potential liability and an opportunity to rebut the presumptions created by the operation of the guidelines. The legislative record manifests no intention, however, to limit the application of the act only to orders entered after its effective date, in contravention of the federal mandate that all "orders being enforced" be subject to periodic review and adjustment.

Our construction of P.A. 90-188 to permit modification of prior child support orders is informed by other statutory developments in Connecticut's child support

---

[9] This distinction was discussed in the public hearing on the proposed amendment. See, e.g., the interchange between Lucy Potter, a legal services attorney and member of the child support guidelines commission, and Representative Douglas C. Mintz. Conn. Joint Standing Committee Hearings, Judiciary, Pt. 2, 1990 Sess., p. 503.

enforcement law. In the same legislative session in which P.A. 90-188 was enacted, the legislature also enacted Public Acts 1990, No. 90-213, § 46 (P.A. 90-213), to reverse the effect of our judgment in *Darak* v. *Darak,* supra. In *Darak,* we considered the retrospective applicability of Public Acts 1987, No. 87-104 (P.A. 87-104), which amended § 46b-86 to permit a court to modify an alimony or support order based on a showing of a substantial change in circumstances, whether or not such change had been contemplated by the parties at the time of the original order. We concluded that the amendment was not to be applied to orders entered prior to the effective date of the amendment because the legislature had not clearly and unequivocally expressed its intention that it be so applied. *Darak* v. *Darak,* supra, 468–70. In P.A. 90-213, § 46 (a), however, the legislature amended the language we had construed in *Darak* to provide that modification "of any child support order issued before or after the effective date of this act" could be made on the basis of a showing of a substantial change in circumstances.

According to well established principles of statutory construction, an amendment that construes and clarifies a prior statute operates as the legislature's declaration of the meaning of the original act. *Darak* v. *Darak,* supra, 471; *State* v. *Blasko,* 202 Conn. 541, 558, 522 A.2d 753 (1987). If an amendment is enacted soon after controversies arise regarding the interpretation of the prior act, " 'it is logical to regard the amendment as a legislative interpretation of the original act . . . .' " *State* v. *Blasko,* supra, quoting 1A J. Sutherland, Statutory Construction (4th Ed. Sands 1984) § 22.31. The legislature's prompt action in adopting the expressly retrospective language of P.A. 90-213, § 46, unambiguously clarifies its original intention that P.A. 87-104 applies to all alimony and support orders, regardless of the date on which they were entered.

The magistrate's memorandum of decision in this case noted that P.A. 90-213 was enacted to counteract our holding in *Darak*. The magistrate concluded, nevertheless, that the express statement of retroactivity added by the 1990 amendment was intended to apply only to the "substantial change of circumstances" provision of § 46b-86. We conclude, to the contrary, that these amendments, which were enacted in the same legislative session to enhance the ability of parties to modify support orders, must be construed to create one consistent body of law. Cf. *Sutton* v. *Lopes*, supra, 120.

Both the "substantial change of circumstances" and the "substantial deviation from child support guidelines" provision establish the authority of the trial court to modify existing child support orders to respond to changed economic conditions. The first allows the court to modify a support order when the financial circumstances of the individual parties have changed, regardless of their prior contemplation of such changes. The second allows the court to modify child support orders that were once deemed appropriate but no longer seem equitable in the light of changed social or economic circumstances in the society as a whole, as reflected in the mandatory periodic revisions of the child support guidelines. See General Statutes § 46b-215a. In light of the similar purposes and language of these provisions, we conclude that the legislature intended both provisions to be applicable to orders entered before the provisions became law.

In further support of our interpretation of the legislative intent underlying P.A. 90-188, we take judicial notice of a statutory development that occurred in the 1991 legislative session, a few months after the trial court rendered its judgment in this case. While the legislature was considering a bill that would establish

a standard by which a court could determine what degree of deviation from the child support guidelines might be considered "substantial," an attorney for a legal services organization informed the Judiciary Committee that trial courts had construed P.A. 90-188 to preclude its retrospective application to orders entered before the effective date of the act. See Conn. Joint Standing Committee Hearings, Judiciary, March 22, 1991, pp. 888–89, remarks of Steven Eppler-Epstein.[10] The legislature subsequently enacted Public Acts 1991, No. 91-76, § 1 (P.A. 91-76), which added the following provisions to § 46b-86 immediately following the text that had been added by P.A. 90-188: "There shall be a rebuttable presumption that any deviation of less than fifteen percent from the child support guidelines is not substantial and any deviation of fifteen percent or more from the guidelines is substantial. Modification may be made of such support order without regard to whether the order was issued before, on or after the effective date of this act." This act was signed by the governor on May 9, 1991, and became effective on that date. See Public Acts 1991, No. 91-76, § 7.

Because P.A. 91-76 was enacted less than eight months after P.A. 90-188 took effect and included language directly responsive to the issue of retrospectivity raised by this case, it is indeed logical to regard it as a legislative interpretation of P.A. 90-188. See *State*

---

[10] In his remarks to the Judiciary Committee, Attorney Steven Eppler-Epstein expressly referred to the decision of the trial court in this case. Although he proposed the amendment regarding retrospective application as a "modification" of P.A. 90-188, it is apparent from the context of his remarks regarding conflicting judicial interpretations of P.A. 90-188 that the retrospectivity amendment was intended to clarify the intention of the legislature in that act. See Conn. Joint Standing Committee Hearings, Judiciary, 1991 Sess., March 22, 1991, p. 889, remarks of Steven Eppler-Epstein. That the amendment was adopted by the legislature with no apparent discussion may further indicate that the legislature regarded it as a matter of clarification.

v. *Blasko,* supra. Although the perceived need for such an interpretative amendment may indicate that the legislature did not express its earlier intention as clearly as it might have done, the promptness with which it adopted the 1991 amendment unequivocally indicates that it originally intended that the substantial deviation provision should be applied to all existing orders, not merely to those entered after October 1, 1990.

In light of the federally mandated objectives of P.A. 90-188, its language and legislative history, and contemporaneous statutory developments in Connecticut's child support law, we conclude that the magistrate improperly refused to consider modifying the child support order in this case on the basis of a claimed substantial deviation from the child support guidelines. We accordingly remand the case to the trial court for further proceedings. In those proceedings, the court is to modify the child support order in accordance with the guidelines unless the defendant satisfies his burden of proving that imposition of such an order would be inequitable or inappropriate. In determining whether the defendant has satisfied this burden, the court should consider the factors set forth in the methodology and general provisions of the child support guidelines as well as the specific figures set forth for the defendant's adjusted income level.[11] If he does satisfy that burden, the court must make a specific finding on the record to that effect.

The judgment is reversed and the case is remanded for further proceedings in accordance with this opinion.

In this opinion the other justices concurred.

---

[11] These factors include, inter alia, the assets and unique needs of each party, the present and potential earning capacity of each party, the special needs of children to be supported by either party, the eligibility of either of the parties for state support, the ages and health of the children and parents, the needs of a second family, and other reasonable considerations. See Guidelines for Child Support Standards Developed Pursuant to P.A. 85-548 by the Commission on Support Guidelines, "Methodology."