[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION RE: PLAINTIFF'S MOTION FOR MODIFICATION AND DEFENDANT'S MOTION FOR CONTEMPT
This case raises issues about the effect of the later adoption CT Page 3943 of the state income tax on orders of support and alimony and wage garnishment which had previously entered against the plaintiff; whether voluntary contributions to a 401K retirement program constitute a permissible deduction from gross earnings pursuant to52-362 (2) of the statutes, lowering the maximum amount of support that may be withheld from wages; and the effect of the child support guidelines in a later modification request where they were not published at the time of the hearing which resulted in the original decree of dissolution.
The marriage of the parties was dissolved on March 20, 1991 at Milford by the court (O'Sullivan, State Trial Referee).
Now before the court is the Plaintiff's Motion to Modify certain support orders against him and the Defendant's Motion to Find the Plaintiff in Contempt for nonpayment of unallocated alimony and support, arrearage and other payments.
The court will first turn to the contempt motion and then to the motion to modify.
 I.
As to the contempt motion, the court rules that (1) the plaintiff should not equitably be required to reimburse his former spouse for $2000 interest and penalties paid to his parents by his former spouse on a second mortgage; (2) the plaintiff should equitably be required to reimburse the defendant $5850 for rental income she did not receive which the decree contemplated she would get, and which she gave up in an accord and satisfaction reached with her former in-laws which mitigated damages she otherwise would have suffered by virtue of the plaintiff's nonpayment of sums due on a second mortgage; (3) plaintiff is further in contempt of court order for certain arrearages totaling $2202.16; (4) the defendant is entitled to payment of her attorney's fees in the amount of $750 in connection with the filing of her contempt motion.
Prior to their divorce, the parties lived in Huntington, Connecticut, in a house they owned there. An in-law apartment was CT Page 3944 constructed for the plaintiff's parents. The plaintiff and defendant borrowed $100,000 for the house purchase, giving back a mortgage to plaintiff's parents for the $100,000 at eight (8%) percent. In turn the plaintiff husband's parents were to pay rent monthly to the plaintiff and defendant. After the divorce, the plaintiff moved from the matrimonial home. Under the decree of dissolution, the defendant wife took "the property subject to existing mortgages thereon" and the court ordered that defendant shall be responsible for all payments on the first and second mortgages from the date of dissolution forward and shall indemnify and hold the plaintiff harmless from any claim which may arise from the [March 20, 1991] date of dissolution forward "with respect to the first and second mortgages." Despite that language however, the decree had a more specific provision relating to the second mortgage loan owed to the plaintiff's parents as follows:
 Within a reasonable time from the dissolution date but not more than three months thereafter the plaintiff shall bring current all payments due on the second mortgage on the Darrin Drive property for which he was responsible under the pendente lite order and which is in arrears in the amount of $9,860 as of January 24, 1991. The plaintiff shall indemnify and hold the defendant harmless from any and all expenses incident to any foreclosure action on the Darrin Drive property arising from the plaintiff's failure to bring current the aforesaid payments due on the second mortgage.
The decree further provided that defendant wife was entitled to receive a rental income from the in-law apartment and that her receipt of the rent was not to be considered a substantial change in circumstances entitling the plaintiff to a modification of his alimony and child support obligation. The plaintiff never paid the second mortgage arrearage. The defendant didn't make the monthly payments on the mortgage. The plaintiff's parents offset that nonpayment against the rent and stopped paying rent and threatened legal action to foreclose their mortgage against their former daughter-in-law. In the face of the foreclosure threat, the defendant wife went through the expense and trouble of obtaining a new mortgage loan and paid the parents $95,300 plus $2,000 separate interest and late penalties in full payment of what was then actually a $106,000 debt and as part of the accord reached between the defendant and the in-laws she released her former in-laws from any claims for back rent.
The court finds that the defendant did not within 90 days of the decree pay the $9860.00 arrearage owed on his second mortgage payments to his parents as the decree required.
The court further finds that the defendant former wife, by CT Page 3945 virtue of the accord reached with the parents of the plaintiff, paid $8700 less than actually owed on the mortgage. As to the claim for reimbursement, it is found that the evidence as submitted to the court concerning this $2000 payment has not proved to this court that the plaintiff should be required to reimburse the defendant for payment of it, and therefore will assess no contempt arrearage on that score either for the $1160 balance of the $9860 not abated or any $2000 "interest penalty" paid by the defendant.
Rental was not paid by the plaintiff's parents and as part of her accord with them the defendant forgave it. Given the evidence before the court, the court finds that this forgiveness was an expense incident to the foreclosure action arising from plaintiff's failure to bring the mortgage current. The court finds the plaintiff indebted to the defendant in the sum of $5,850 being the amount of that rent. The court finds that it is more likely than not that the plaintiff's failure to bring the mortgage current by payment of the $9860 balance on pendente lite orders prompted the parents to stop their payment of rent; that loss of that income to which the defendant was entitled together with plaintiff's support arrearage built up between March 22, 1991 and July 12, 1991, left her unable to pay her portion of the elder Dizazzo's mortgage, prompting a threat of imminent foreclosure. To stave off that dismal prospect, the defendant, who is a mother with three young children, made her accord and satisfaction with the elder Dizazzos. That cost her $5850 forgiven in rent which under the circumstances the plaintiff should pay to her since it is his delict in adhering to the orders of the court that caused her this loss of income which the decree provided she would receive. He is ordered to pay it in full to her in accordance with the schedule hereinafter set out.
It might be argued that despite the parents' threats of foreclosure, that technically there was "no action" triggering the plaintiff's obligation under the decree to indemnify and hold the defendant harmless from any expense caused to her by the "foreclosure action", because technically no writ, summons and complaint of foreclosure had been served on her sufficient to constitute a foreclosure action requiring indemnity under the decree. The court's view is that such a narrow interpretation of the decree is not warranted but that in any event the defendant is entitled to recover reasonable expenses she took to mitigate the possible harm and damages to her by virtue of the plaintiff's noncompliance with the decree. Our law incorporates a policy that a party has a clear duty to minimize damages caused by another's breach of a duty to perform an obligation, and when a person acts reasonably to mitigate damages, that person who has spent money in reasonable efforts to so mitigate damages is entitled to recover that cost. See: West Haven Sound Development Corporation v. West Haven, 201 Conn. 305 at 332. Under the circumstances, it would CT Page 3946 have been foolish for the defendant to idly watch expense mount for sheriffs, docketing, attorney's and committee's fees in connection with the actual commencement and prosecution of a foreclosure suit, and do nothing to mitigate damages.
Further, in light of the court's factual findings and because it is a court of equity, as an alternate ground the court cites to that old equitable maxim, "Where one of two persons must suffer loss, it is just that it should fall on him who caused it".
The court further finds that as of January 31, the date of the last of several hearings before this court, the plaintiff was further in arrears in his payments as follows:
 $1718.00 for arrearage from March 22 to July 12, 1991 484.16 for arrearage from November 1, 1991 to February ---------- 7, 1992
$2202.16 Total
which sum is due and owing the defendant.
The schedule of payment on the arrearages found here for lost rental income in the amount of $5850.00 and $2202.16 for past due support and alimony shall be at the rate of $50.00 per week set in the dissolution decree, for arrearages until all are erased. The court awards the defendant attorneys fees of $750 in connection with the motions, to be paid to the defendant's attorney within 180 days of this order.
 II.
The defendant has also moved for modification of prior orders pursuant to "Title 15 U.S.C. p. 1052, subsection 1672b; Public Act 89-203, and Public Act 85-548 p. 2 1".
The court rules that: (1) enactment of the state income tax is a substantial change in expense which the court must consider under provisions of 46b-86, but it does not warrant modification of the unallocated $470 award of support and alimony and payment on the arrearage in this case because it is counterbalanced by plaintiff's increased rental income; (2) voluntary contributions to a retirement program constitute a permissible deduction from earnings of an individual for determining what maximum amount of wage execution may be deducted from his earnings under state law but only to the extent the amount is reasonable in light of the support needs of the beneficiaries of the support order; (3) the support guidelines if exceeded might be cause for modification, even though published after the decree but they have not been exceeded under the facts found; (4) nonetheless, federal law CT Page 3947 requires a reduction in the garnishment of the plaintiff's wages; (5) there is no substantial change in circumstances or violation of child support guidelines which warrant modification of the total weekly unallocated order, however, so the court will not reduce the weekly amount ordered in the decree even though the part of that order actually withheld from wages must be reduced.
In order to be entitled to a modification of a child support order the movant must show that there either has been substantial change in the circumstances of one of the parties; see C.G.S.46b-86; and McGuinness v. McGuinness, 185 Conn. 7 (1981); or that the current child support order substantially deviates from the child support guidelines. See C.G.S. 46b-86; and Turner v. Turner,219 Conn. 703 (1991).
Public Act No. 85-548 has now been codified as 52-362 of the Connecticut General Statutes.
Section 52-362 (2) of the General Statutes governing wage executions for support provides in pertinent part:
 (2) "Disposable earnings" means that part of the earnings of an individual remaining after deduction from those earnings of amounts required to be withheld for the payment of federal income and employment taxes, normal retirement contributions, union dues and initiation fees, and group life and health insurance premiums.
There is therefore no allowable deduction under this statutory subsection for amounts withheld for state income tax purposes.
Title 52, Chapter 906, 52-362 (c)(6) governing withholding orders provides in pertinent part that:
 (6) the amount of the withholding order may not exceed the maximum percentage of disposable earnings which may be withheld pursuant to Section 1673 of Title 15 of the United States Code, together with a statement of his right to claim any other applicable state or federal exemptions with respect thereto.
Subsection (f) of 52-362 provides in pertinent part that:
 (f) A withholding order shall issue in the amount necessary to enforce a support order against only such nonexempt earnings of the obligor as exceed the greater of (1) the first one hundred dollars per week of disposable earnings, or (2) the amount exempt under Section 1673 of Title 15 of the United States Code, or against any lesser amount which the court or family CT Page 3948 support magistrate deems equitable. The withholding order shall secure payment of past and future amounts due under the support order and an additional amount equal to twenty per cent of the current order or ten dollars weekly, whichever is greater, to be applied toward liquidation of any arrearage accrued under such order, unless contested by the obligor after a delinquency notice has been served pursuant to subsection (c) of this section, in which case the court or family support magistrate may determine the amount to be applied toward the liquidation of the arrearage found to have occurred under prior order of the court or family support magistrate. On service of the order of withholding on an existing or any future employer, and until the support order is fully satisfied or modified, the order of withholding is a continuing lien and levy on the obligor's earnings as they become due.
It is clear to the court that pursuant to subsection (f) of52-362 that the court can order withholding against a "lesser amount" of a person's wages as it "deems equitable" and under that authority, amounts payable by way of state income tax should be considered in making that judicial determination.
Public Act 91-3 (June 1991, Special Session) adopted a state income tax. Section 56 of it required employers to withhold from an employee's wage. It reads as follows:
 Sec. 56 (NEW) (a) Each employer maintaining an office or transacting business within this state and making payment of any wages taxable under section 51 to 92, inclusive, of this act to a resident or nonresident individual shall deduct and withhold from such wages for each payroll period a tax computed in such manner as to result, so far as practicable, in withholding from the employee's wages during each calendar year an amount substantially equivalent to the tax reasonably estimated to be due from the employee under sections 51-93, inclusive, of this act with respect to the amount of such wages during the calendar year. The method of determining the amount to be withheld shall be prescribed by regulations of the commissioner of revenue services adopted in accordance with chapter 54 of the general statutes.
The plaintiff's state income tax has been the sum of $69 weekly on an annualized basis.
Plaintiff Michael Dizazzo's finances are as follows:
From Employment CT Page 3949 ---------------
 Gross Income ------------ Itemized deductions: $900 Federal withholding — see attached worksheets $158 Social Security $56 Medicare $13 State withholding — see attached worksheets $69 Medical insurance (1/2 total for children myself) $56 401K pension plan $90 Total deductions $442 Net Weekly Wage $458 Other Income Rental Income $226 Total Weekly Net Income $684
A wage execution of $470 has been in effect consisting of $420 weekly unallocated alimony and child support plus $50 weekly toward an arrearage of $2,586.
After the state income tax withholding commenced, Mr. Dizazzo's entire $458 net employment pay was reached by the execution and there was still an arrearage on the $470 weekly orders. The plaintiff was left only with his weekly rental income of $226.
The court will now turn to interpreting whether under 52-362(2) the "Disposable Earnings" from which a support wage execution may be levied are permissibly derived by permitting deduction from the gross earnings amounts a party voluntarily has deducted from his wages for a 401K or similar retirement plan. A fair construction of the statute is that it should be interpreted to include not just an amount deducted involuntarily by an employer but amounts voluntarily authorized by an employee who has no other employer plan. However, because of the strong public policy embodied in our statutes that a divorced person should provide needed support both to his former spouse and children, a court has the inherent power to determine how much of the contribution should be deductible from gross income in determining "Disposable Earnings" lest the present support needs of a family be hostage to the future pension hopes of a person charged with their support. Permitting the wage earner to voluntarily deduct whatever he or she wishes up to the maximum permitted by the Internal Revenue Code, could thwart legitimate support orders, by permitting a person charged with a duty of support to defer income and thereby lower the amount of "Disposable Earnings" which are subject to support CT Page 3950 wage execution.
The court rules, given the need of the children and defendant former wife to be supported, that no more than $40.00 of the plaintiff's weekly 401K contribution should be deductible.
Child support guidelines which went into effect on March 1, 1991 determine applicable child support required to be paid by parents, but deviation for certain standardized exceptions is authorized.
According to state guidelines the support order for the children against the plaintiff should be $338.60. When $50 is added to net wages by virtue of disallowing all but $40 of the plaintiff's weekly 401K contribution, the guidelines share of child support amounts to $343.65.[1] The court does not find any of the exceptions to the guidelines warrant deviation from them. The balance of Judge O'Sullivan's $420 weekly unallocated order of alimony and child support would be permissible alimony.
The court therefore finds no present violation of the "Child Support Guidelines" by virtue of Judge O'Sullivan's decree of March 20, 1991.
The next issue to be determined by the court is whether or not the amount being withheld from the plaintiff's wages exceeds the amount which may be taken by way of garnishment under federal law.
Under Title 15 1672(a) and (b) of the U.S. Code, federal law respectively defines the terms "earnings" and "disposable earnings" as follows:
 (a) The term "earnings" means compensation paid or payable for personal services, whether denominated as wages, salary, commission, bonus, or otherwise, and includes periodic payments pursuant to a pension or retirement program.
 (b) The term "disposable earnings" means that part of the earnings of any individual remaining after the deduction from those earnings of any amounts required by law to be withheld.
Insofar as it pertains here, 1673 of the U.S. Code provides that the maximum part of the aggregate disposable earnings of an individual for any workweek when the person charged with the support is not supporting a second wife or child is 60% or 65% to the extent such an order enforces an arrearage accumulated prior to the twelve week period which ends with the beginning of the wage execution. An arrearage payment is being enforced here so the 65% CT Page 3951 rule applies.
For purposes of determining the maximum wage garnishment under federal law the present entire $90 voluntary 401K deduction must be disallowed because it is not "required by law to be withheld" under 1672 U.S.C. Similarly, the health insurance for the plaintiff and children amounting to $56 is not required to be withheld. This brings 1672 disposable earnings from wages up to $604 a week from which support is sought. Sixty-five percent of that sum is $398 weekly. The federal law is a limitation on the amount which may be garnished from "earnings" for "personal services". Rental income is therefore not included. The court concludes that federal law does not permit more than $398 of the support order to be garnished by withholding that sum from employment wages. Since the present wage garnishment exceeds federal law limits by $72 weekly it must be reduced by that amount to $398.
Adoption of the state income tax has lessened the net income of the plaintiff by $69 per week from the time of the initial decree to the present. The plaintiff urges that event as reason for reduction of his present unallocated child support and alimony weekly payments of $420 plus $50 payable on arrearages. The defendant's gross income declined from $167 weekly at the time of the divorce trial to $140 weekly, but her business expenses decreased by $17 per week, for almost a wash. Her rental income increased by the amount of $196 monthly, but the decree specifically provided that was not to be considered a substantial change in circumstances warranting a modification of the plaintiff's support and alimony orders.
The plaintiff, on the other hand, has the same gross earnings now as then but his rental income increased from $130 weekly then to $226 now, counterbalancing the $69 increased expense he now pays in state income tax. The court therefore finds neither substantial change in circumstances nor violation of child support guidelines, one of which would be necessary to warrant modification.
Accordingly, defendant's motion to modify the weekly order is denied.
Finally, there is little question that at this time the plaintiff is left with little of his total income. However, that results from a decree of dissolution from which he did not appeal. In rendering a dissolution judgment, a court is required to weigh the trial evidence in light of the statutory criteria for financial orders and the issues involving those financial orders in such an original decree of divorce are interwoven. Sunbury v. Sunbury,210 Conn. 170. This court in hearing a modification motion regarding support and alimony orders in the original decree is constrained to act within the limits of 46b-86. It cannot retry judgments that CT Page 3952 were made at trial, based on evidence offered during the dissolution trial as to fault and other pertinent statutory factors which were relevant, but must determine only whether there has been substantial change in circumstances of one party occurring since trial or some substantial deviation from child support guidelines.
FLYNN, JUDGE