[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] RULING ON THE PLAINTIFF'S MOTION FOR CONTEMPT
Pending before the court is a motion for contempt for failure to pay child support filed by the plaintiffs mother, Cheryl Douglas against the defendant father, Merrill Douglas. The court heard evidence on the motion and issued a preliminary decision from the bench and this ruling supplements that decision.
The parties have four children: Tina, born on January 18, CT Page 6371 1976; Angela, born August 17, 1977; Robert, born on February 17, 1979; and Crystal, born March 2, 1981. The parties' dispute centers around the alimony and child support provision of the May 27, 1993 dissolution decree that incorporated a stipulation of the parties. This provision provides the following:
 The husband agrees to pay child support and alimony to the Wife in an amount of $625 per week. The proportion of this amount attributable to child support is to be paid until the children reach the age of 18 and is to be consistent with the child support guidelines, the remainder shall be alimony. The Husband and Wife further agree that said alimony shall not be less than $325 and is to paid for a period of seven years and shall be non-modifiable as to the amount or term.
The court concluded that this provision required the child support to be paid until each child successively reached the age of 18 consistent with the child support guidelines. Stated differently, as each child reached majority, the child support would be modified consistent with the child support guidelines applicable at the time of the modification. However, irrespective of any modification of the amount of the child support, the alimony portion of the support would not be less than $325, would be paid for seven years or until June 2000, and would be non-modifiable as to amount or term. The youngest child turned 18 in March 1999, and therefore, the alimony provision operated to continue the support payment at $325 per week for 14 months after the obligation to pay child support ended. The court concluded that while the support order, especially the last sentence, was subject to some vagueness, this was the only reasonable construction of the support provision consistent with the language of the order and the established law concerning the application of the child support guidelines to modifications of child support orders. See generally, Turner v. Turner219 Conn. 703, 716 (1991) (holding that modifications of child support orders as to future support payments shall be based on the guidelines existing at the time of the modification even for support orders issued prior to the effective date of the guidelines.)
The court notes that this construction of the support order differs from the present positions of the parties, particularly the position of the father. The father's view is that as each child became 18 years old, he was automatically and unilaterally CT Page 6372 entitled to reduce the child support by $75. He reasoned that since the child support portion of the order was $75 a week for each child, he was entitled to reduce the child support by this amount as each child reached majority age. The obvious problem with this position is that this"proportionate" reduction unilaterally taken by the father without a court ordered modification is not consistent with any of the child support guidelines existing in 1993 or at any time since then. In other words, child support under the guidelines does not proportionately decrease in equal amounts with the decrease in the number of children to be supported. The father's position simply cannot be squared with the plain language of the support order requiring the child support to be consistent with the guidelines.
The mother maintains that the father could not unilaterally reduce the child support and that any reduction of child support as each child reached majority age required a court order. See generally, Eldridge v. Eldridge, 244 Conn. 523 (1998). Consequently, she argues that since there was no court ordered modification of the support, she is entitled to an arrearage based on the difference between the $300 per week order and what had actually been paid, which she calculated to be $39,750. As part of its preliminary decision, the court questioned this result as not being consistent with or justified by the support order. The court reasoned that if the mother claimed an arrearage, than the arrearage should be calculated pursuant to the terms of the order, namely by taking the difference between the amount of the child support which should have been paid under the guidelines as each child reached majority age and the amount of child support that had actually been paid. As the parties had not provided the court with evidence sufficient to evaluate or calculate the arrearage on this basis, the court directed the parties to confer and either agree on the amount of the arrearage based on the court' preliminary order or to provide further information to the court regarding their positions on this issue.
The mother responded to the court's direction by providing information indicating that the arrearage consistent with the court's reasoning would be $43,654. The father responded to the court's request by arguing that the court's construction of the divorce decree constituted a retroactive modification of the support order in violation of Section 46b-86 (a) of the General Statutes ("No order for periodic payment of . . . support may be subject to retroactive modification, except that the court may CT Page 6373 order modification with respect to any period during which there is a pending motion for modification of [a] . . . support order from the date of service of notice of such pending motion upon the opposing party pursuant to section 52-50."). The court rejected this argument on the record as part of its preliminary ruling, and the father's reassertion of this objection represents either a request for the court to reconsider its position or an effort to state this position on the record in a more detailed fashion. In any event, the court will briefly address this issue to provide further clarification.
The court's interpretation of the support decree does not represent a modification of the order. The court has not modified the order at all. The court has simply interpreted the order in a manner consistent with the language of the order and the applicable law. Indeed, this is the interpretation that the father would have acquired earlier if he had appropriately moved to modify the order as the children reached majority age, rather than inappropriately reducing the child support unilaterally. Simply because the father has incorrectly interpreted the order does not make the correct interpretation a retroactive modification. In other words, the father failed to comply with the law because of his own erroneous interpretation of the court order. This failure, in turn, resulted in his failure to pay support for his children consistent with the child support guidelines as ordered by the court, and an arrearage was created. There is nothing about these circumstances that evenly remotely resembles a retroactive modification of a child support order as contemplated under Section 46b-86 (a).
The court appreciates the equitable nature of the father's argument, particularly in light of the court's finding that his non-compliance with the support order was not wilful or contemptuous. On the one hand the father insists that it is unfair and unjust to now impose a construction of the order which will expose him to an arrearage which at least he (and he argues both parties) never anticipated. Yet on the other hand, the father has acted on an erroneous interpretation which has caused him to pay far less child support than required by law. Considering all these factors, including the father's equitable argument, the court on balance finds the mother's position as being more persuasive. Despite the in artful phrasing of the support order, no reasonable construction justified the father's view that an automatic"proportionate,"$75 reduction of the support when each child reached majority age was"consistent with CT Page 6374 the child support guidelines" and that this reduction could be accomplished unilaterally without judicial review and modification. The fact that the father's position would operate so grossly to deprive the mother of the child support to which she was legally entitled mitigates against the father's equitable argument.
Therefore, the motion for contempt is denied on the ground that the father was presented with an issue which caused him to have a legitimate misunderstanding and created a genuine controversy about the terms of the support order so that the court cannot conclude that his noncompliance was wilful. The court finds an arrearage of $39,750, the court declining under these circumstances to find an arrearage for an amount more than the amount sought by the movant. This arrearage shall be paid at the rate of $150 per week.
So ordered this 5th day of May 1999
Stevens, J.