[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Thomas Sticca, appeals from a decision of the defendant, Commissioner of the State of Connecticut Department of Motor Vehicles ("DMV"), suspending his motor vehicle operator's license for a period of six months. The DMV acted pursuant to General Statutes § 14-227b on the basis that the plaintiff refused to submit to a chemical test of the alcohol content of his blood after having been arrested on a charge of driving while under the influence of alcohol. The plaintiff appeals pursuant to the Uniform Administrative Procedure Act ("UAPA"), General Statutes §§ 4-166 et seq., 4-183.
Section 14-227b(g) limits license suspension hearings to four issues.[1] A line of case authority recognized that a suspension hearing is in fact limited to a determination of the four issues. Volck v. Muzio, 204 Conn. 507, 509-10 (1987);Buckley v. Muzio, 200 Conn. 1, 6-8 (1986); Dalmaso v. Dept. ofMotor Vehicles, 47 Conn. App. 839, 842-44, cert. dismissed,247 Conn. 273 (1998). The plaintiffs issues do not relate to the factors of probable cause, operation or arrest. The plaintiffs claims all relate to the refusal issue.
The plaintiff argues that there is insufficient evidence in the record to support the conclusion as to the refusal; that the refusal was not witnessed by a third person; that the decision should be overturned because the police officer failed to disclose exculpatory information to the hearing officer and finally that the decision as a whole is based on inconsistencies which render it clearly erroneous.
The facts underlying the case are essentially as follows. The plaintiff, oh January 19, 1999, at approximately 2:00 a.m., was stopped by a state police officer for speeding on Interstate 84. The plaintiff was clocked by a laser device operating at a speed of 83 miles per hour in a posted 50 miles per hour zone. The plaintiff, pulled over by the officers, exhibited glassy and bloodshot eyes; a strong odor of an alcoholic beverage emanating CT Page 11293 from his vehicle, several beer cans in plain view on the floor of the vehicle and the accused took several minutes to produce his license when asked to do so by the officer. The plaintiff admitted to drinking, lost his balance when exiting his vehicle and staggered when walking to the rear of his vehicle. The plaintiff performed poorly on field sobriety tests and was arrested for operating under the influence and speeding.
It is not disputed that the officer selected a breath test using an Intoxilyzer 5000 device. The plaintiff agreed to submit to such test but gave an insufficient sample due to his failure to blow into the machine correctly. The accused ultimately refused an additional breath test asserting that he had blown into the machine the best he could. The arresting officer and another state trooper verified in the A-44 report and in testimony before the hearing officer that the plaintiff had refused to submit to a Breathalyzer test.
The plaintiff contends that he submitted to two tests and was not required to submit to a third test; thus, the refusal to take a third test should not constitute a refusal under the statute. The plaintiff relies on § 14-227b-7 of the Regulations of Connecticut State Agencies entitled "Refusal to Take Additional Test" which provides that "a person who refused to submit to a second blood breath or urine test of the same type after having taken a first test shall be deemed to have refused to submit to a chemical analysis." The record contains evidence that at 2:27 a.m. on January 19, 1999 a Breathalyzer test was attempted on the plaintiff but registered "Invalid test interferent detected." In addition, the A-44 contains an attachment indicating that a test was attempted on the plaintiff at 2:30 a.m. January 19, 1999 which reflects "test refused." The plaintiff argues that he submitted to tests at 2:27 a.m. and 2:30 a.m. and subsequently was charged with a refusal to take an additional test. The A-44 indicates that the first intoximeter test was at 2:30 a.m.; thus, the officer was of the belief in his testimony that the 2:27 a.m. test tape was not counted as a test because there was an inability to get a reading.
In his decision the hearing officer made subordinate findings as follows: "Mr. Sticca refused to continue the testing process after two unsuccessful attempts to provide a sample." (Return of Record ("ROR"), Item 9, Decision.)
The court rejects the plaintiffs construction of the implied CT Page 11294 consent law § 14-227b of the General Statutes and specifically the interpretation of § 14-227b-7 of the Regulations of Connecticut State Agencies as prohibiting the police from requesting a third attempt to submit to an alcohol test under the circumstances of this case.
"[P]rinciples of statutory construction . . . require us to construe a statute in a manner that will not thwart its intended purpose or lead to absurd results. Turner v. Turner,219 Conn. 703, 712, 595A.2d 297 (1991). We must avoid a construction that fails to attain a rational and sensible result that bears directly on the purpose the legislature sought to achieve. Peckv. Jacquemin, 196 Conn. 53, 63-64, 491 A.2d 1043 (1985). [Turner v. Turner, supra,] 713. Scrapchansky v. Plainfield,226 Conn. 446, 453, 627 A.2d 1329 (1993); see also State v. Johnson, [227 Conn. 534, 542, 630 A.2d 1059 (1993)]; Fairfield Plumbing Heating Supply Corp. v. Kosa, 220 Conn. 643, 650-5 1, 600 A.2d 1
(1991). (Internal quotation marks omitted.) Concept Associates,Ltd. v. Board of Tax Review, 229 Conn. 618, 624, 642 A.2d 1186
(1994). It is also a rule of statutory construction that those who promulgate statutes or rules do not intend to promulgate statutes or rules that lead to absurd consequences or bizarre results. . . ." (Citations omitted; internal quotation marks omitted.) State v. Spears, 234 Conn. 78, 92, cert. denied,516 U.S. 1009, 116 S.Ct. 565, 133 L.Ed.2d 490 (1995).
The requirement for more than one test is also found in §14-227a(c) relating to the admissibility of chemical analysis tests in "any criminal prosecution." Subsection (5) of General Statutes § 14-227a(c) requires that an additional chemical test of the same type be performed at least thirty minutes after the initial test. It does not follow from such requirement that where the police are unable to obtain a test result from an initial attempt that they may not make more than two attempts at obtaining blood alcohol readings. The obvious import of the regulations is to deal with the situation where an accused submits to one test but declines to submit to the requisite follow up test. This is apparent from the regulations titled "Failure to Take Additional Test." The purpose is to have two tests with readings to substantiate the analysis. The plaintiffs construction would invalidate test results whenever a test attempt yielded no result. An operator who refused to provide a indicating a willingness to do so, could never be found to have refused, if a test procedure was aborted. A third attempt would be necessary, but under the plaintiffs theory, impermissible. The CT Page 11295 regulation "Failure to Take Additional Test" makes clear that such conduct constitutes a refusal for purposes of the implied consent law and automatic suspension.
The plaintiff makes an additional argument with respect to the application of the portion of § 14-227b(c) providing "[i]f the person arrested refused to submit to such test or analysis, the report shall be endorsed by a third person who witnessed such refusal." In this case, the A-44 report contains the signature of Trooper Douglas Fox indicating "[t]he operator named above refused to submit to such test or analysis when requested to do so. The refusal occurred in my presence and my endorsement appears below." (ROR, Officer's DWI Arrest and Alcohol Test Failure Report (Form A-44).) In addition, Trooper Fox testified at the hearing that it was his practice to take the arrested operator into another room if there was a question of a refusal to give him another opportunity to elect to continue the testing procedure. The plaintiff asked the court to construe § 14-227b(c) to require that the witnessing third person be present when the initial refusal is made by the operator.
Recently, our Appellate Court review the specific requirement in the case of Mailhot v. Commissioner of Motor Vehicles,54 Conn. App. 62 (1999). The court noted: "Clearly, the statute requires that, in addition to the person charged and the arresting officer, any refusal to take the test must be witnessed by a third party. Obviously, the intent of this provision is to avoid a "my word against yours' situation." Id., 65-66. In the instant case, both the arresting officer and Trooper Fox affirmed under oath in the A- 44 and in sworn testimony that they personally witnessed the plaintiff refusing to submit to a blood alcohol test. The evidence by the two officers thus was with the intent to avoid a "my word against yours" situation. It does not appear that the language of the statute or its intent require the ritualistic reenacting of the refusal in front of the third party witness. It is sufficient if the two officers "or other persons" are able to provide evidence based on their personal observation that the accused refused to participate or complete the testing process.
The plaintiffs claim with respect to exculpatory evidence relates to the omission of the 2:27 a.m. result indicating "Invalid test interferent detected." At the hearing, the officer testified that the 2:27 a.m. reading was not a test result, since there was an inability to obtain a reading. CT Page 11296
The plaintiff relies on the authority of Brady v. Maryland,373 U.S. 83 (1963) and its progeny finding a violation of the constitutional protection of due process of law where the prosecution suppresses evidence favorable to the accused. The plaintiff, however, fails to demonstrate how the invalid test results were favorable to the accused and that Brady is applicable to administrative proceedings in a civil matter. The court concludes that the 2:27 a.m. tape was not exculpatory, and declines to extend Brady to an administrative proceeding.
The plaintiffs final claim of arbitrariness or erroneous decision is in essence evidentiary claims. Such claims are governed by the substantial evidence rule.
The court's "review of an agency's factual determination is constrained by General Statutes § 4-183 (j), which mandates that a court shall not substitute its judgment for that of the agency as to the weight of the evidence on questions of fact. The court shall affirm the decision of the agency unless the court finds that substantial rights of the person appealing have been prejudiced because the administrative findings, inferences, conclusions, or decisions are . . . (5) clearly erroneous in view of the reliable, probate, and substantial evidence on the whole record. . . . This limited standard of review dictates that, with regard to questions of fact, it is neither the function of the trial court, to retry the case or to substitute its judgment for that of the administrative agency. . . . An agency's factual determination must be sustained if it is reasonably supported by substantial evidence in the record taken as a whole. . . . Substantial evidence exists if the administrative record affords a substantial basis of fact from which the fact in issue can be reasonably inferred. . . . This substantial evidence standard is highly deferential and permits less judicial scrutiny than a clearly erroneous or weight of the evidence standard of review. . . . The burden is on the plaintiffs to demonstrate that the [agency'ls] factual conclusions were not supported by the weight of substantial evidence on the whole record. . . ." (Brackets omitted; citations omitted; internal quotation marks omitted.) New Enaland Cable Television Assn., Inc. v. DPUC,247 Conn. 95, 117-18 (1998). The A-44 and testimony of the police officers constitute substantial evidence of plaintiffs refusal to submit to the required testing process.
The decision is affirmed and the appeal is dismissed. CT Page 11297
Robert F. McWeeny, J.