RICHARD A. FAHY *v.* THELMA ANN FAHY
(14647)

PETERS, C. J., BORDEN, BERDON, KATZ and PALMER, Js.

Argued June 8—decision released August 31, 1993

*Wesley W. Horton,* with whom were *Alexandra Davis, Raynald B. Cantin* and, on the brief, *Michael S. Taylor,* legal intern, for the appellant (plaintiff).

*Joel M. Ellis,* with whom was *Catherine P. Kligerman,* for the appellee (defendant).

BORDEN, J. The plaintiff, Richard A. Fahy, appeals[1] from the judgment of the trial court granting the motion of the defendant, Thelma Ann Fahy, for an increase in her periodic alimony. The plaintiff claims that the trial court: (1) incorrectly concluded that Public Acts 1990, No. 90-213, § 46[2] (P.A. 90-213, § 46), permits the modification of an award of periodic alimony made prior to October 1, 1987, the effective date of Public Acts 1987, No. 87-104[3] (P.A. 87-104), without

---

[1] The plaintiff appealed from the judgment of the trial court to the Appellate Court, and we transferred the appeal to this court pursuant to Practice Book § 4023 and General Statutes § 51-199 (c).

[2] Public Acts 1990, No. 90-213, § 46, amended General Statutes (Rev. to 1989) § 46b-86 (a) by inserting the following italicized language into the statute: "After the date of judgment, modification *of any child support order issued before or after the effective date of this act* may be made upon a showing of such substantial change of circumstances, whether or not such change of circumstances was contemplated at the time of dissolution." The act became effective on July 1, 1990.

[3] Public Acts 1987, No. 87-104, repealed General Statutes (Rev. to 1987) § 46b-86 (a), and replaced it with the following: "Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support or an order for alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party. After the date of judgment, modification may be made upon a showing of such substantial change of circumstances, whether or not such change of circumstances was contemplated at the time of dissolution. By written agreement, stipulation or by decision of the court, those items or circumstances that were contemplated and are not to be changed may be specified in the written agreement, stipulation or decision

proof by the moving party of a substantial change in circumstances that was not contemplated at the time of the dissolution of the marriage; and (2) abused its discretion by basing its finding of a substantial change in circumstances on (a) changes in the plaintiff's gross income rather than his net income, and (b) an erroneous calculation of his net income. Although we agree with the plaintiff's first claim as a matter of statutory interpretation, as a matter of common law adjudication, we reach the same result as the trial court. We also agree with the plaintiff's second claim. Accordingly, we reverse the judgment of the trial court and remand the case for a new hearing.

The facts are not in dispute. The plaintiff is a psychiatrist, and the defendant works part-time in a jewelry store. The twenty year marriage of the parties was dissolved on October 6, 1980. At the time of the dissolution, the trial court, *Hon. Samuel S. Googel,* state trial referee, granted the defendant unallocated alimony and child support of $24,000 per year, to be reduced to alimony of $21,600 per year when the parties' youngest child reached the age of eighteen. The child reached eighteen in 1985.

In this proceeding in 1991, the plaintiff moved to reduce, and the defendant moved to increase, the award of alimony. The trial court, *Norko, J.,* denied the plaintiff's motion, and the plaintiff has not appealed from that denial. The trial court granted the defendant's motion and increased the award of alimony by $9600 per year.

The trial court concluded that General Statutes (Rev. to 1991) § 46b-86 (a)[4] eliminated the requirement that

of the court. This section shall not apply to assignments under section 46b-81 or to any assignment of the estate or a portion thereof of one party to the other party under prior law." The act became effective on October 1, 1987.

[4] General Statutes (Rev. to 1991) § 46b-86 provides in relevant part: "MODIFICATION OF ALIMONY OR SUPPORT ORDERS AND JUDGMENTS.

in order to modify alimony because of changed circumstances, such circumstances must not have been contemplated at the time the judgment of dissolution was rendered. In this regard, the trial court concluded that the language added to § 46b-86 (a) by P.A. 90-213, § 46; see footnote 4; was intended to clarify that the elimination of the contemplation requirement applies to judgments of dissolution rendered both before and after October 1, 1987, and applied to orders of alimony as well as to orders of child support.

The trial court also determined that the plaintiff's financial condition had undergone a substantial change in circumstances. The trial court based this determi-

(a) Unless and to the extent that the decree precludes modification, any final order for the periodic payment of permanent alimony or support or an order for alimony or support pendente lite may at any time thereafter be continued, set aside, altered or modified by said court upon a showing of a substantial change in the circumstances of either party or upon a showing that the final order for child support substantially deviates from the child support guidelines established pursuant to section 46b-215a unless there was a specific finding on the record that the application of the guidelines would be inequitable or inappropriate. In determining whether to modify a child support order based on a substantial deviation from such child support guidelines the court shall consider the division of real and personal property between the parties set forth in the final decree and the benefits accruing to the child as the result of such division. *After the date of judgment, modification of any child support order issued before or after July 1, 1990, may be made upon a showing of such substantial change of circumstances, whether or not such change of circumstances was contemplated at the time of dissolution. By written agreement, stipulation or by decision of the court, those items or circumstances that were contemplated and are not to be changed may be specified in the written agreement, stipulation or decision of the court.* This section shall not apply to assignments under section 46b-81 or to any assignment of the estate or a portion thereof of one party to the other party under prior law. No order for periodic payment of permanent alimony or support may be subject to retroactive modification, except that the court may order modification with respect to any period during which there is a pending motion for modification of an alimony or support order from the date of service of notice of such pending motion upon the opposing party pursuant to section 52-50." (Emphasis added.) The emphasized language is the codification of Public Acts 1990, No. 90-213, § 46.

nation upon a comparison of the plaintiff's gross income as a sole medical practitioner in 1980, namely, $95,000, with the gross income of the group of health care providers with whom he had practiced in 1991, namely, $644,964. In addition, the trial court compared the plaintiff's net income in 1980 with his net income in 1991. In that comparison, however, the trial court used posttax income for the 1980 figure and pretax income for the 1991 figure. This appeal followed.

I

The plaintiff first claims that the trial court incorrectly concluded that P.A. 90-213, § 46, as incorporated into § 46b-86 (a); see footnote 4; applies to awards of alimony. He argues that the plain language of that portion of § 46b-86 (a) affects only orders of support, and that such an interpretation of the statute is consistent with the broad legislative purpose intended by the enactment of P.A. 90-213, § 46.

We agree with the plaintiff that P.A. 90-213, § 46, applies only to orders of child support. Under the plain language of the statute, support orders, whether entered before or after October 1, 1987, may now be modified without regard to whether the change of circumstances had been contemplated at the time of dissolution. We also conclude, however, apart from P.A. 90-213, § 46, but using that public act as a source of our own judicial power, that as a matter of common law the modification of alimony orders should be treated the same as support orders are required to be treated pursuant to P.A. 90-213, § 46. Accordingly, absent a written stipulation or prior judicial order to the contrary, the trial court, when faced with a request for modification of an alimony award, should exercise its discretion without regard to whether the change of circumstances had been contemplated at the time of the previous award.

Some statutory history is helpful to an understanding of this issue. Before the enactment, in 1987, of P.A. 87-104, in order to secure a modification of an order of either periodic alimony or child support, the moving party was required to establish that: (1) under General Statutes (Rev. to 1985) § 46b-86 (a), there had been a substantial change in circumstances affecting one of the parties; and (2) under a common law judicial gloss on that statute, the substantial change in circumstances was not contemplated at the time of the dissolution of the marriage. *Grinold* v. *Grinold,* 172 Conn. 192, 195, 374 A.2d 172 (1976); see also *Darak* v. *Darak,* 210 Conn. 462, 465, 556 A.2d 145 (1989). The enactment of P.A. 87-104, the gist of which remains as part of the first sentence of § 46b-86 (a); compare footnotes 3 and 4; repealed the second part of that test.

In *Darak,* however, we held that the amendment to the modification statute applied only prospectively, that is, to modifications of dissolution judgments that had been rendered on or after October 1, 1987, the effective date of the public act. *Darak* v. *Darak,* supra, 469. Central to our rationale for this holding was the absence of a specific indication of a legislative intent to "disrupt settled expectations" by applying a substantive change retrospectively. Id. Under *Darak,* in order to modify an award of alimony or an order of support, a party seeking a modification of a judgment of dissolution rendered before October 1, 1987, was required to establish that the change of circumstances had not been contemplated at the time of the judgment; and a party seeking to modify such a judgment rendered on or after October 1, 1987, was not required to establish that the change of circumstances had not been so contemplated.

The legislature again amended § 46b-86 (a) by P.A. 90-213, § 46, which took effect on July 1, 1990. That public act stated: "After the date of judgment, modification of any child support order issued before or after

the effective date of this act may be made upon a showing of such substantial change of circumstances, whether or not such change of circumstances was contemplated at the time of dissolution."

The enactment of P.A. 90-213, § 46, was followed by our decision in *Turner* v. *Turner,* 219 Conn. 703, 595 A.2d 297 (1991). In *Turner,* we considered the retroactivity of a different 1990 public act, namely, Public Acts 1990, No. 90-188. Id., 712–16. In the course of that discussion, we recognized that the legislature had, at the same session, enacted P.A. 90-213, § 46, in order "to reverse the effect of our judgment in *Darak* v. *Darak,* supra." *Turner* v. *Turner,* supra, 717. We stated that "[t]he legislature's prompt action in adopting the expressly retrospective language of P.A. 90-213, § 46, unambiguously clarifies its original intention that P.A. 87-104 applies to all *alimony* and support orders, regardless of the date on which they were entered." (Emphasis added.) Id. It is the validity of the reference to "alimony" orders in *Turner* that is at issue in this case, because the trial court understandably followed that language in entering its order in this case.

A fair reading of *Turner,* however, makes clear that our reference to alimony was dictum, because neither an alimony award nor P.A. 90-213, § 46, was at issue in that case. In light of this dictum, therefore, this case requires us to decide for the first time whether § 46b-86 (a), as amended by P.A. 90-213, § 46, provides for modification of an award of alimony that had been made prior to October 1, 1987, the effective date of P.A. 87-104, without a showing of a substantial change in circumstances that was not contemplated at the time of the dissolution order. Upon plenary consideration of this issue, we agree with the plaintiff that, as a matter of statutory interpretation, the phrase, "child support order," as used in P.A. 90-213, § 46, cannot be read to mean alimony as well. We therefore conclude

that § 46b-86 (a) does not provide that an order of periodic alimony that had been entered prior to October 1, 1987, may be modified without proof that the requisite change of circumstances had not been contemplated at the time the order was entered.

" 'We approach this question according to well established principles of statutory construction designed to further our fundamental objective of ascertaining and giving effect to the apparent intent of the legislature. . . .' " *Lauer* v. *Zoning Commission,* 220 Conn. 455, 459–60, 600 A.2d 310 (1991). " 'In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment, to the legislative policy it was designed to implement, and to its relationship to existing legislation and common law principles governing the same general subject matter. . . .' " Id., 460.

The plain language of the statute indicates that the modification of a preexisting "child support order" no longer requires that the substantial change in circumstances have been contemplated at the time of the entry of the initial order of support. Absent from the statutory language, however, is any concomitant reference to an order of alimony. Because the terms "support" and "alimony" are terms that "have acquired a peculiar and appropriate meaning in the law"; General Statutes § 1-1 (a);[5] they are to be construed in accordance with that technical meaning. As a matter of statutory interpretation, therefore, we simply cannot stretch the meaning of "child support order" as used in P.A. 90-213, § 46, to include "alimony." Furthermore, the legisla-

---

[5] General Statutes § 1-1 provides in part: "WORDS AND PHRASES. (a) In the construction of the statutes, words and phrases shall be construed according to the commonly approved usage of the language; and technical words and phrases, and such as have acquired a peculiar and appropriate meaning in the law, shall be construed and understood accordingly."

tive history of P.A. 90-213, § 46, is silent regarding the legislative intent behind the use of the phrase "child support order." We can find no justification in that history, therefore, for reading that phrase in other than its technical sense. In light of the legislative language and history, therefore, we conclude that P.A. 90-213, § 46, applied exclusively to child support orders, and did not include alimony.

That conclusion, however, does not end our inquiry. The plaintiff argues that the legislature, by its use of the term "child support order" and by the absence of any concomitant reference to alimony orders, intended to create a different set of rules for support and alimony orders. We are not convinced.

It is true that, in interpreting statutes we have on occasion read specific statutory references to indicate a legislative intent to exclude, by implication, other related potential referents. See, e.g., *Roto-Rooter Services Co.* v. *Department of Labor,* 219 Conn 520, 525, 593 A.2d 1386 (1991). Furthermore, if in this case either the explicit language or the legislative history of P.A. 90-213, § 46, had indicated such a legislative intent, we would be required to respect that implication, and we would be precluded from reaching a result by way of common law adjudication that was contrary to that intent. Neither the statutory language nor that legislative history, however, indicates such an intent.

We proceed, therefore, to a more fundamental principle of adjudication. Just as the legislature is presumed to enact legislation that renders the body of the law coherent and consistent, rather than contradictory and inconsistent; see *Sutton* v. *Lopes,* 201 Conn. 115, 120, 513 A.2d 139, cert. denied sub nom. *McCarthy* v. *Lopes,* 479 U.S. 964, 107 S. Ct. 466, 93 L. Ed. 2d 410 (1986); courts must discharge their responsibility, in case by case adjudication, to assure that the body of the law—

both common and statutory—remains coherent and consistent. That principle leads us to conclude that, as a matter of the common law rather than as a matter of statutory interpretation, alimony orders should be treated similarly to the way that child support orders are now required to be treated pursuant to P.A. 90-213, § 46.

In another context, we have previously used statutes as a useful source of policy for common law adjudication, particularly if there was a close relationship between the statutory and common law subject matters. See *New England Savings Bank* v. *Lopez,* 227 Conn. 270, 281–82, 630 A.2d 1010 (1993) (use of the Uniform Commercial Code as a statutory source for real property transactions); *Olean* v. *Treglia,* 190 Conn. 756, 762, 463 A.2d 242 (1983) (same); *Conference Center Ltd.* v. *TRC,* 189 Conn. 212, 225, 455 A.2d 857 (1983) (same); *Hamm* v. *Taylor,* 180 Conn. 491, 494–95, 429 A.2d 946 (1980) (same); see also *Canton Motorcar Works, Inc.* v. *DiMartino,* 6 Conn. App. 447, 453–54, 505 A.2d 1255, cert. denied, 200 Conn. 802, 509 A.2d 516 (1986) (use of statute governing rights of successor corporation following merger as precedent for determining rights of partnership as successor entity following a merger). "Statutes are now central to the law in the courts, and judicial lawmaking must take statutes into account virtually all of the time. . . . More often, the issue is rather to what extent a statute is itself a source of policy for consistent common law development." E. Peters, "Common Law Judging in a Statutory World: An Address," 43 U. Pitt. L. Rev. 995, 998 (1982); see generally J. Landis, "Statutes and the Sources of Law," Harvard Legal Essays (R. Pound ed. 1934) p. 213; G. Calabresi, A Common Law for the Age of Statutes (1982). We consider this case to be a similarly appropriate instance for this adjudicative technique.

Alimony and support have historically been treated by both the legislature and the courts of Connecticut as "entirely interwoven. 'The rendering of a judgment in a complicated dissolution case is a carefully crafted mosaic, each element of which may be dependent on the other.' *Ehrenkranz* v. *Ehrenkranz,* 2 Conn. App. 416, 424, 479 A.2d 826 (1984)." *Sunbury* v. *Sunbury,* 210 Conn. 170, 175, 553 A.2d 612 (1989). This principle recognizes a very practical truth: orders of periodic alimony and orders of child support, although resting upon different legal bases—namely, financial maintenance of the former spouse and financial maintenance of children—in most cases must be crafted so that, conjunctively, they provide for fair and reasonable financial maintenance of the remaining family unit. Indeed, in this case the two were originally combined and unallocated. It would be irrational, and would render the body of our marital dissolution law incoherent, to require a trial court, when determining whether to modify child support and alimony orders entered prior to October 1, 1987, to treat the two orders differently with respect to whether the change of circumstances had been contemplated at the time of the dissolution. Moreover, given the fungibility of money, such a result would elevate form over substance, because it would create the incentive for a trial court, in an effort to reach a fair overall financial award, to tailor modifications in such a way that the statutorily required disparity is rendered a nullity. We do not believe that to be a wise course of adjudication or policy.

It is appropriate, moreover, to use the policy expressed by P.A. 90-213, § 46, as a source of common law adjudication in this case because the source of the "noncontemplation rule" was, in its inception, a judicial, common law gloss on the modification statute. That source is the statement of this court in *Grinold* v. *Grinold,* supra, 195: "[T]he changed circumstances

requiring a modification must not have been contemplated by the parties at the time of the entry of the decree . . . . 2A Nelson, Divorce & Annulment (2d Ed.) § 17.07." Significantly, we did not rely upon either the language or the purpose of our modification statute in arriving at that conclusion. The only authority cited for the proposition was Nelson's treatise, which in turn, relied only on a Washington case for its authority. Thus, we regard the *Grinold* rule, which our courts consistently followed until the enactment of P.A. 87-104, as an example of common law adjudication, rather than as an authoritative interpretation of § 46b-86.

Given the practical connection between alimony and support, the sound policy reasons for having similar rules for the treatment of alimony and support,[6] and the absence of any preclusive reference in § 46b-86 (a) to alimony, we conclude that, as a matter of common law adjudication, it is appropriate to extend elimination of the noncontemplation of the circumstances requirement to orders of alimony issued prior to October 1, 1987. Accordingly, we hold that awards of alimony even though made prior to October 1, 1987, are subject to modification upon a showing of a substantial change in circumstances of either party. Whether such change in circumstances was contemplated at the time of the dissolution is not relevant to a subsequent modification. The trial court, therefore, was correct in its ultimate treatment of the contemplation requirement with respect to the alimony award.

---

[6] We note that for federal income tax purposes, alimony is deductible from income by the payor and taxed as income to the recipient, while support is neither deductible nor taxable. Internal Revenue Code, 26 U.S.C. §§ 71, 215. We think that this tax treatment strengthens the rationale for having similar rules governing alimony and support, because often trial courts will, either explicitly or implicitly, craft financial orders in light of this differing tax treatment.

## II

The plaintiff next claims that the trial court abused its discretion by finding a substantial change in circumstances in his financial condition. The plaintiff argues that the trial court, in making this determination, incorrectly compared his gross income in 1980 with the gross income of a group of professionals with whom he was associated in 1991. The plaintiff also claims that the trial court incorrectly relied on a faulty comparison of his net income: comparing posttax income in 1980 with pre-tax income in 1991. We agree with each of these contentions.

"The well settled standard of review in domestic relations cases is that this court will not disturb trial court orders unless the trial court has abused its legal discretion or its findings have no reasonable basis in the facts. *Gallo* v. *Gallo,* [184 Conn. 36, 50, 440 A.2d 782 (1981)]." *McGuinness* v. *McGuinness,* 185 Conn. 7, 13, 440 A.2d 804 (1981). The foundation for this standard is that the trial court is in an advantageous position to assess the personal factors significant to a domestic relations case. See *Corbin* v. *Corbin,* 179 Conn. 622, 624, 427 A.2d 432 (1980). "This appeal presents one of the rare cases in which the trial court abused its broad discretion . . . by making crucial findings [that are] not reasonably supported by the facts." *McPhee* v. *McPhee,* 186 Conn. 167, 177, 440 A.2d 274 (1982).

Ordinarily, the standard for determining alimony, including modifications thereto, is net income available rather than gross income. *Collette* v. *Collette,* 177 Conn. 465, 469, 418 A.2d 891 (1979); *Wanatowicz* v. *Wanatowicz,* 12 Conn. App. 616, 619, 533 A.2d 239 (1987); *Bronson* v. *Bronson,* 1 Conn. App. 337, 340, 471 A.2d 977 (1984). The record is clear that, in finding a substantial change in circumstances in the plaintiff's

finances, the trial court relied on a comparison of his gross income in 1980 with the gross income of the group of practitioners with whom he practiced in 1991, and on a comparison of the plaintiff's posttax income in 1980 with his pretax income in 1991. These comparisons were faulty because they treated different methods of describing the plaintiff's income as though they were the same. In addition, the comparisons were constructed in such a way as to underestimate the plaintiff's income in 1980 and overestimate his income in 1991. The use of this methodology constitutes an abuse of discretion.

The judgment is reversed and the case is remanded for a new hearing on the defendant's motion for modification.

In this opinion the other justices concurred.