[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
This post-dissolution Motion for Modification of alimony arises following a judgment entered on February 22, 1983 and a later agreement of the parties, dated May 19, 1993, accepted by the court and entered as an order of the court (Steinberg, J.) on that date. The order reduced defendant's periodic alimony payment from $3000 to $2600 per month.
The order continued defendant's Motion for Modification
"until the first short calendar in January 1994." CT Page 9075
It also stated:
 "(That) at the time of said hearing, the issue will remain whether there has been a substantial, unforeseen change of circumstances from the date of the dissolution judgment."
Connecticut General Statutes Section 46b-86(a), addressing modifications of alimony, now requires "a showing of a substantial change in the circumstances of either party". Contemplation is no longer a statutory factor.
Our Supreme Court has held, however, that parties may stipulate to, or the court may order, the inclusion of contemplation:
 "Accordingly, absent a written stipulation or prior judicial order to the contrary, the trial court when faced with a request for modification of an alimony award, should exercise its discretion without regard to whether the change of circumstances had been contemplated at the time of the previous award." Fahy v. Fahy, 227 Conn. 505, at 509 (1993).
Permitting self-ordering by the parties involved in a dissolution is appropriate. It permits them some degree of control of the process and of their own lives. In the instant case, the agreement of the parties to retain "a substantial, unforeseen change of circumstances" as a factor in alimony modification, was submitted to the court for its approval. Found to be fair and equitable, Connecticut General Statutes 46b-66, the agreement of the parties was entered as an order of the court.
Thus, this court must now determine not only whether there has been a substantial change of circumstances but whether that change had been contemplated.
Among the many observations contained in the Memorandum of Decision (Hennessy, J.) were the following: CT Page 9076
a. "The plaintiff is . . . in good health."
b. "The defendant . . . during 1982 had a tumor removed from his brain. He continues to suffer ringing in his ears and poor balance."
c. "The defendant has the ability to receive and possibly increase his income from his law firm and investments.
d. "The plaintiff has the opportunity to increase income from her investments (identified by the trial court as `$317 per week income derived from a little over $200,000 in stocks which she received from her parents' estate) and the possibility of receiving additional income from teaching.'"
e. "The defendant is a partner in a large law firm from which he derives a regulated income in addition to a share of the partnership distribution and further monies resulting from a merger of his law firm with another which will continue until 1994."
f. "Although the future of the defendant in the law firm is impossible to predict, based upon the present business of the law firm, it can be reasonably expected that the defendant will be receiving income from the firm in amounts of over $100,000 a year."
g. "The weekly expenses of the plaintiff are considerable in amount. Although most of them are reasonable, the court feels that they need not all be met by the defendant."
h. "Among its orders, the trial court directed that the defendant maintain insurance on his life . . . with the plaintiff as beneficiary in an amount three times as great as the yearly alimony awarded to the plaintiff by a court of competent jurisdiction."
The trial court also noted, ". . . the most significant evidence presented to explain the breakdown was the relationship the defendant (husband) had with several women resulting in embarrassment to the plaintiff (wife), CT Page 9077 arguments and a realization that the defendant during the past decade acted in a way which rejected a philosophy of monogamy which the plaintiff felt the defendant should have embraced."
Defendant is no longer in good health. He has elected to retire from employment on December 31, 1994, a not unreasonable decision, given the length of his employment and his substantial physical deterioration, which has become more than a mere ringing in his ears and poor balance. He is, for all reasonable purposes, unemployable.
Although defendant retains the ability to receive and increase his income from his investments, he no longer enjoys the ability to receive and possibly increase his income from his law firm. The judgment spoke of a regular income from defendant's large law firm and an additional share of the partnership distribution. The monies resulting from the merger will cease, as contemplated, on December 341, [31,] 1994. No future income from his law firm can be expected.
Defendant retired from his law firm in 1990. He is now "of counsel" to the firm pursuant to a one year contract that expires December 31, 1994. His gross income from the firm at the time of hearing was $480.76 a week. Plaintiff did not increase her income from teaching or from investments in any substantial way.
Plaintiff's securities at the time of dissolution cited by the trial court as $191,800 to $195,800, are now
 Securities $473,889 Mother's estate 207,840 Cash 109,831 -------- $791,560
At the time of the dissolution, the defendant's alimony payments generated a 50% tax deduction for the payor. Today's tax structure offers the payor lower tax benefits.
In 1983 plaintiff's gross weekly income was $317.04 a week, $272.00 net. Her sworn financial affidavit submitted CT Page 9078 for this hearing reflects $613.00 gross and a net of approximately $473.00, excluding $600.00 of weekly alimony. Her testimony indicated she also enjoys a weekly nontaxable income of $100.00 a week and a cash flow of $672.45 per month from a mortgage she holds on property of Sandra and Mark Amende.
In 1993, defendant's income, as reflected in his sworn financial affidavit was $997.00 a week. His current affidavit reports $1765.00 a week gross, $1172.00 net. Of this, $480.00 weekly gross and $295.00 net terminates December 31, 1994.
Each of the parties enjoys investment funds that are substantial and relatively equal in size, each being within approximately 10% of the other's funds.
Having reviewed the evidence and the financial affidavits of each party in the context of the required considerations set forth in Title 46b, Chapter 815j of the Connecticut General Statutes, a finding shall enter that substantial changes in circumstances have occurred since February 22, 1983, that a preponderance of those changes were unforeseen, and, therefore, the order directing alimony payments entered on that date is modifiable.
Alimony payments of defendant husband to plaintiff wife are hereby reduced to $1100.00 per month, effective May 3, 1994.
Life insurance directives entered by the court in February of 1993 shall remain in full force and effect.
Steinberg, J.