[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
I.
 Background
The sole issue in this case, and the two similar cases, (River Glen Condominium Association, Inc. v. James P. Agard, Docket No. CV 94-0065655S, and River Glen Condominium Association, Inc. v. Robert H. Rothbart, Docket No. CV 94-0065778S) is as follows:
If a first mortgagee and a condominium association are simultaneously foreclosing their respective security interests in a specific condominium unit, is the six months priority conferred on liens for delinquent condominium common charge assessments by Conn. Gen. Stat. § 47-258(b) permanently extinguished if the foreclosing first mortgagee pays the association the then outstanding common charges, late fees, attorney's fees, title search CT Page 3901 fees, court filing fees, sheriff's fees and the appraisal fee; or does the priority apply again if a subsequent common charge delinquency occurs during the pendency of the first mortgagee's foreclosure?
In this case the plaintiff withdrew its foreclosure after being paid by the first mortgagee, but thereafter, while the first mortgagee's foreclosure was still pending, the plaintiff started the instant action, a second foreclosure, which seeks to foreclose a subsequent lien for common charge assessments which have accrued after the payment was received from the first mortgagee.
The plaintiff claims that under § 47-258(b), its new lien again carries a six months priority to the first mortgagee's lien. The first mortgagee denies that its mortgage is subsequent and subordinate to the plaintiff's subsequent lien of common charge assessments.
 II Discussion
A. Statute.
As stated in the Defendants' Trial Brief on Pages 4, 5, 6 and 7 dated March 21, 1995, Conn. Gen. Stat. § 47-258
provides as follows:
"§ 47-258 Lien for Assessments
 (a) The association has a statutory lien on a unit for any assessment levied against that unit or fines imposed against its unit owner from the time the assessment or fine becomes delinquent. . .
 (b) A lien under this section is prior to all other liens and encumbrances on a unit except (1) liens and encumbrances recorded before the recordation of the declaration. . . (2) a first or second security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent, . . .and (3) liens for real CT Page 3902 property taxes and other governmental assessments or charges against the unit . . .The lien is also prior to all security interests described in subdivision (2) of this subsection to the extent of (A) an amount equal to the common expense assessments based on the periodic budget adopted by the association pursuant to subsection (a) of section 47-257 which would have become due in the absence of acceleration during the six months immediately preceding institution of an action to enforce either the association's lien or a security interest described in subdivision (2) of this subsection and (B) the association's costs and attorney's fees in enforcing its lien. A lien for any assessment or fine specified in subsection (a) of this section shall have the priority provided for in this subsection in an amount not to exceed the amount specified in subparagraph (A) of this subsection. This subsection does not affect the priority of mechanics' or materialmen's liens, or the priority of liens for other assessments made by the association.
This statute is based substantially upon Section3-116 of the Uniform Common Interest Ownership Act, which Connecticut adopted effective January 1, 1984 (Conn. Gen. Stat. §§ 47-200 to 47-295). Commentators[1] have characterized Section 30-116 as creating a special "split priority" for common charge assessment liens. That is while the entire lien is prior to all other encumbrances except (a) those which pre-date the declaration of the condominium development, (b) first and second mortgages filed before the common charge delinquency arose, and (c) taxes and other governmental assessments, there is a further, "super priority" provided to a portion of the lien, even with respect to senior first and second mortgages.
The Official Comment to Section 3-116 of the Uniform Act recognizes the unique status given to the common charge assessment lien:
"A significant departure from existing CT Page 3903 practice, the 6 months' priority for the assessment lien strikes an equitable balance between the need to enforce collection of unpaid assessments and the obvious necessity for protecting the priority of the security interests of lenders."
7 Unif. Laws Anno. at 354."
What this statute does, by granting a six months priority to a condo association, is to accommodate the competing needs of a condo association faced with delinquent assessments, and a lender simultaneously seeking to protect the priority of its security interest.
If the plaintiff's interpretation of this statute were to prevail, the six month limitation on the priority would be ineffectual, because after the original delinquency is paid in full, and the foreclosure is withdrawn, a new priority would arise as soon as there is any further delinquency, effectually extending the six months indefinitely, even though the defendant's foreclosure action is still pending.
Such an interpretation and result would be a distortion of the statute and a subversion of the policy underlying it.
 "A statute should be construed so that no word, phrase, or clause will be rendered meaningless." Verrastro v. Silversten, 188 Conn. 213, 221 (1982) (citations omitted). The facts that this court looks to in construing a statute include "its legislative history, its language, the purpose it is to serve, and the circumstances surrounding its enactment." Verrastro, supra, p. 221 (citations omitted).
See also Fahy v. Fahy, 227 Conn. 505, 512 (1993).
The defendant throughout has been pursuing its own first mortgage foreclosure. The statute provides that the priority is limited to "the six months immediately preceding institution of an action to enforce either the CT Page 3904 association's lien or a security interest" (referring to a first mortgage lien prior to the association lien), such as the defendant's in this case. Therefore, if the plaintiff were allowed to create a new six-month priority by starting a new foreclosure action after the defendant has already satisfied one six month delinquency, and while the defendant's foreclosure action is still pending, the defendant would have to absorb more than one priority during the pendency of its foreclosure, which does violence to the statutory language.
 In construing a statute, "we follow the `golden rule of statutory interpretation' . . . that the legislature is presumed to have intended a reasonable, just and constitutional result." (Emphasis added.) Sanzone v. Board of Police Commissioners, 219 Conn. 179, 187, 592 A.2d 912 (1991).
Furthermore, if the plaintiff's position is upheld, it would deter first mortgage lenders from paying condo associations some portion of the delinquency. As stated in the Official Comment of Section 3-116 of the Uniform Common Interest Ownership Act:
 "To ensure prompt and efficient enforcement of the association's lien for unpaid assessments, such liens should enjoy statutory priority over most other liens. . .As a practical matter, secured lenders will most likely pay the six months' assessments demanded by the association rather than having the association foreclose on the unit."
7 Uniform Laws Anno. at 354.
Why would any secured lender pay off the priority amount if, by so doing, a new priority was created. Instead, the secured lender would wait as long as possible to avoid the very thing that the plaintiff seeks to obtain in this case. They would be better off waiting until their law day to redeem, thereby frustrating the very propose of the statute.
B. LEGISLATIVE HISTORY.
CT Page 3905
 The goal of statutory construction is to discern the intent of the legislature. In seeking to discern that intent, we look to the words of the statute itself, to the legislative history and circumstances surrounding its enactment and to the legislative policy it was designed to implement.
Fahy, supra, page 512.
During the 1991 legislative session, two proposed bills were enacted. A review of testimony and comments during discussion of those bills, indicates that the condominium associations were limited to one six month priority. See Defendant's March 21, 1995 Trial Brief, Pages 10, 11, 12 and 13.
CONCLUSION
The court finds the issues for the plaintiff against the defendant Kevin L. Woulfe, and against the plaintiff as to the defendant STM Mortgage Company. STM Mortgage Company's interest is prior to the plaintiff's six months common charges.
The Court cannot act on the Motion For Judgment of Strict Foreclosure until current military affidavits concerning Kevin L. Woulfe and the defaulted defendants in the Agard and Rothbart cases are filed.
HON. RICHARD A. WALSH, J.