[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.]
MEMORANDUM OF DECISION
A brief review of the procedural posture of the case is appropriate. The parties were divorced on October 6, CT Page 3365 1980. At the time the trial court, Hon. Samuel Googel, granted to the defendant Mrs. Fahy unallocated alimony and child support in the amount of $24,000 per year, to be reduced to $21,600 per year when the youngest child reaches the age of eighteen. That circumstance occurred on September 22, 1985.
On January 16, 1991 the defendant Mrs. Fahy filed a motion for modification, claiming that the plaintiff's financial circumstances have greatly improved while the defendant's circumstances have deteriorated. The plaintiff thereafter on May 28, 1991 filed a motion to modify/terminate alimony, claiming that there had been a substantial change in circumstances which makes the aforementioned order of alimony inequitable.
These motions were tried to conclusion before this Court, Judge Norko, who issued the Court's memorandum of decision on June 29, 1992. Judge Norko found that the plaintiff, Dr. Fahy's, financial circumstances have greatly improved while the defendant, Mrs. Fahy's, circumstances have deteriorated. The Court increased the alimony by $184.24 per week.
The plaintiff Dr. Fahy appealed to the Appellate Court from the judgment of the trial court granting the motion of the defendant Mrs. Fahy for an increase in her periodic alimony. See Fahy v. Fahy, 227 Conn. 505, at p. 506 (1993). The Supreme Court transferred the appeal to the Supreme Court pursuant to Practice Book Sec. 4023 and General Statutes § 51-199(e). See footnote, Fahy v. Fahy,
supra, p. 506.
The Supreme Court specifically states "The trial court, Norko, J., denied the plaintiff's motion and the plaintiff has not appealed from that denial." Fahy v.Fahy, supra, p. 507.
The Supreme Court reversed the decision of the trial court, as concerns Mrs. Fahy's motion, concluding that the trial court in determining the plaintiff Dr. Fahy's financial circumstances, was in error in comparing gross income of the plaintiff in 1980 to the gross income of the group of practitioners with whom he practiced in 1991; and in comparing his post-tax income in 1980 with his pre-tax CT Page 3366 income in 1991.
The procedural paradox is self-evident. In failing to appeal the 1992 decision of the Court on his motion to modify the judgment, then the decision of the Court on the plaintiff's motion to modify is res adjudicata as to the plaintiff's claim per his motion that as of that date, 1992, to wit that, his circumstances had substantially deteriorated and/or that the defendant's financial circumstances had substantially improved since 1980 such as to warrant a downward change, or decreasing, of the alimony order. The Supreme Court, having set aside the determination of the plaintiff's income by the trial court on the defendant's motion, it is logically difficult to reconcile a proposition that the trial court was in error as concerns the finding of the plaintiff's income on the defendant's motion, while inferentially accepting that same erroneous finding as concerns the plaintiff's motion through the application of the principles of res adjudicata. Yet the application of the principles of res adjudicata is applicable as to the denial of the 1992 motion of the plaintiff.
The plaintiff claims that even if this paradox does in fact exist, yet his financial circumstances have substantially deteriorated since the 1992 judgment, on the parties' motions, the motion of the defendant now being before this court on remand. Hence he claims that he should be entitled to pursue a motion for modification even if he is bound by res adjudicata as concerns the decision on his 1992 motion.
The Court concludes that the plaintiff does have the right to address that question, his 1992 finances versus his present finances before this Court. Hence the court allowed the defendant to file his motion to modify/terminate alimony, filed February 8, 1995, and to consolidate that motion for trial with the remanded motion of the defendant. The alternative, that of allowing separate and successive trials on the defendant's motion and on the plaintiff's new motion, would be completely wasteful of the resources of the Court and the resources of each of the parties.
I CT Page 3367
Preliminary Considerations
It should be noted that the plaintiff has remarried, prior to 1992 and that the plaintiff is paying to his present wife the sum of between $52,000 (1992) and now $55,299 per annum (1994) as his employee in her capacity as his office manager. The Court finds that this salary, though on the high side, is fair and reasonable for that work, bearing in mind the number of professionals who work in the plaintiff's office.
The Court does not take into consideration the earnings of the present wife in arriving at the decisions on the present motions. The earnings of the wife are to be treated as her separate estate. Her earning and assets cannot be charged to stand for the sole obligation of her husband to pay alimony. She is not obligated to assist the plaintiff in the payment of his alimony obligations, no more than would any other person who may be related to him by blood or marriage. See cases such as Mallory v.Mallory, 207 Conn. 48, 56 (1988).
The Court further finds, from the testimony, that the present wife does contribute to her share of the personal living expenses of the household, housing, food and the like. This is as expected and required of any employed adult who shares common quarters with other adults. See public policy as expressed in General Statutes 46b-86(b);Duhl v. Duhl, 7 Conn. App. 92, 93 (1986); Warwick v.Warwick, 7 Conn. App. 361, 362 (1986). The earnings of the present wife are her own and are not available for consideration as if they were the plaintiff's income in the determination of these motions. The Court must segregate the wife's earnings from the joint gross earnings to accomplish this purpose, while accepting the wife's contribution toward the occupancy and sustenance expenses of the couple as fair and reasonable.
The Supreme Court, in remanding this case, Fahy v.Fahy, 227 Conn. 505 (1993) states, on page 517,"Ordinarily, the standard for determining alimony, including modification thereto, is net income available rather than gross income." Internal citations omitted; emphasis added. This problem arose because the court, in CT Page 3368 the original dissolution judgment of October 6, 1980, found that "the plaintiff has a gross earning potential of over $95,000 in the current year."
The 1980 memorandum of decision however did not translate the figures into, did not find, the plaintiff's net (gross minus tax) income figure. Hence this court, in 1992 had only a 1980 gross income as a starting point. The court therefore used net income of $49,560 from the plaintiff's 1980 affidavit, which of necessity was far less than what would have been the case had there been a calculated net income finding in the 1980 judgment. The 1980 net income by affidavit figure $49,560 related to hisgross income by affidavit figure of $67,428, which gross was some $27,572 less than the gross of $95,000 by judgment
upon which the 1980 Court's order was based.
The matter was further complicated by the court utilizing $184,088 as the plaintiff's net (post-tax) income for 1991, when in fact that figure is the plaintiff'spersonal pre-tax gross income (income tax returns, line 12) derived from business income less business expenses. See income tax returns, "Schedule C. Profit or Loss From Business", line 31, which is the source of the business person's personal gross income, to be reported on line 12 of the tax return. The calculation by the Court in 1992 therefore underreported the plaintiff's 1980 net income and overreported the plaintiff's 1992 net income, thereby greatly enlarging the mathematical difference between 1980 net income and 1992 net income.
To use gross income, rather than net income, may conceivably provide a basis for inferring in general terms the fact of a change of circumstances. However failure to consider mandatory deductions for mandatory State and Federal income tax and FICA (Social Security Tax) fails to determine actual discretionary disposable income of the parties and hence, at the very least, of necessity, implicates the reliability of the amount of the Court orders as concerns alimony or support.
The case is further complicated by the fact that thedefendant, in 1980, did not list, in her affidavit, an amount for Federal income tax. Alimony is taxable. The court in 1980 did not determine her net income. The court CT Page 3369 in 1992 set out the defendant's gross wages from the 1991 tax return, but did not compare it to either gross or net alimony and earning capacity in 1980.
 II
The logical first issue before the court is whether the plaintiff's circumstances have substantially changed since the 1992 decision so as to determine whether the nonappealed adverse decision on the plaintiff's 1992 motion is res adjudicata as to his 1995 circumstances.
The 1992 personal gross income from the plaintiff's business was $167,328 (income tax return, exhibit F, line 12; plaintiff's Exhibit H submitted by his accountant). The personal gross income from the plaintiff's business for 1994 is $149,926 (Plaintiff's Exhibit H). The 1994 income tax return has not yet been prepared. Personal gross income from business operations has decreased $17,402 comparing 1992 to the tax year ending December 31, 1994.
The plaintiff's wife is employed by him, at a 1992 salary of $52,000. Neither her income nor her share of taxes from the joint return are to be included in the calculation of the plaintiff's net income. The plaintiff had additional income from pension plan withdrawal of $29,216, interest of $515 and capital gain of $340. Total gross income for husband and wife in 1992 was $249,399. $52,000 is attributed to the wife and $197,399 to the plaintiff husband. $52,000 divided by $249,399 equals 20.85 percent as the wife's percentage share of total joint gross income. Hence 79.15% is the plaintiff husband's share of total gross joint income.
The total of federal income tax attributable to the total gross joint income is $48,210. 20.85% of this tax is attributable to the wife's earnings. 79.15% of this tax is attributed to the husband's share of the gross income. $48,210 tax times 79.15% equals $38,158 of federal tax on his, the plaintiff's, share of the gross. Combined state income tax was $12,600. 79.15% of this tax is $9,972. His penalty tax on early withdrawal of his personal pension funds is $2,921. His personal self-employment tax is $10,658. Deducting from his share of the 1992 gross, $197,399, the above sums of $38,158, $9,972, $2,921 and CT Page 3370 $10,658 yields a personal net after tax disposable income of $135,690 for the plaintiff for the year 1992.
The Court uses the same method to compare the present income. The plaintiff has not furnished the 1994 income tax return. However, his Exhibit H reveals that 1994 personal gross income for business will be $149,926, which is roughly comparable to though less than his personal gross income reported in the 1993 income tax return. The Court does not credit the plaintiff's contention that 1995 will be substantially less than 1994, or that a reduced figure represents his earning capacity.
The 1993 income tax demonstrates that the plaintiff's share of gross income was $156,855 and his wife's income was $55,299. The wife's percentage share of total joint gross income was 24.65% of the total gross income. The husband's percentage share was 75.35% of total gross income.
The federal income tax on the entire joint gross for 1993 was $40,035. The plaintiff's share of federal income tax is 75.35% times $40,035, — i.e. $30,166. His share of the State income tax was 75.35% of $11,132, i.e. $8,387. His personal self-employment (Social Security tax) was $10,751. Deducting from his share of the gross income ($156,855) the above figures $30,166, $8,387, $10,751 would yield $107,601 as his net after tax disposable income of the plaintiff for 1993. He has $7,000 less in personal gross income for 1994 than in 1993, His tax on this $7,000 amount would be approximately $1,750, hence his personal net after tax income for 1994 should be approximately $102,350.
The plaintiff's personal gross income minus tax has diminished from $135,690 in 1992 to $102,350 in 1995. The court finds that this diminuation of after tax income from the time of the trial in 1992 to the time of this trial is substantial.
In 1992 the plaintiff had $33,935 in liabilities. At the time of this trial his liabilities are $53,500, an increase in liabilities of $19,565. The court finds that this is a substantial increase in liabilities. CT Page 3371
On the asset side his pension plan has increased from $200,000 to $340,000 which is a significant increase. He was able to protect against the prospect of imminent bankruptcy by turning over to mortgagee banks $575,000 of real estate investments, leaving him no real estate, and thereby alleviating a drain on his income which would inevitably have drained away his pension plans to try to bring the equity up to the level of the mortgage debts.
The court further finds from the evidence of the plaintiff that the plaintiff's present wife has voluntarily paid over most of her income to pay the joint taxes which obviously enabled the plaintiff to substantially increase his pension plan, at his now age of 59. The Court does not feel that it is fair and equitable to treat the increase in pension plan in precisely the same fashion as would be if the ability to put aside pension funds was derived solely or mostly from the plaintiff's own earnings.
The Court finds that the plaintiff's financial circumstances are substantially different, and lesser, in 1995 then they were in 1992. Hence the judgment of the Court on his motion to decrease alimony in 1992 is not res adjudicata as to his motion to modify/terminate alimony filed January 27, 1995.
 III
The issue presently before the court is whether there has been a substantial change in circumstances as concerns the parties, comparing the financial circumstances of the parties at this time, 1995, as compared to the circumstances of the parties at the time of the original judgment of October 6, 1980.
The defendant places the issue before the Court by virtue of her motion for modification dated January 6, 1991, claiming that "Since the date of judgment the plaintiff's financial circumstances have greatly improved while the defendant's circumstances have deteriorated." The plaintiff places the same issue before the court by his motion of January 25, 1995 claiming that "there has been a substantial change in circumstances . . ." "since the entry judgment" in October 6, 1980. CT Page 3372
Utilizing the same method as used to compare the 1995 net to the 1992 net, the Court turns to the affidavit of the plaintiff in 1980. The 1980 affidavit shows gross income of $5,619 per month (i.e., $67,428 annual gross). It shows $1,489 per month federal income tax and self-employment tax. The tax to gross ratio ($1489 divided by $5619) reflects that 26.49 percent of the reported gross was consumed by taxes. Using Judge Googel's finding of $95,000 earning capacity, thence reduced by 26.49% for taxes ($25,165) yields $69,835 net income for 1980. Comparing this to the net income of $102,350 in 1995, supra, reveals that the plaintiff's net income has increased by $32,515. The Court finds this to be a substantial increase in yearly net income.
Although the plaintiff's living expenses have increased by $22,020 per annum ($54,940 in 1960 to $76,960 in 1995) yet this is more than offset by the increase in net income of $32,515 per annum. Both of the 1980 and 1995 expense figures include living expenses and payment on recurrent debts and alimony in the respective years. Comparing income to expenses. The plaintiff is approximately $10,495 better off per annum in 1995 than was the case in 1980.
The plaintiff's liabilities have increased from $39,219 in 1980 to $53,500 in 1995. However, the plaintiff's assets have increased from $76,625 in 1980 to $341,733 in 1995, a net increase in net worth of $250,827. The court finds this to be a substantial increase in net assets, even accepting that some of the later pension contributions were made available by the generosity of the plaintiff's present wife.
The Court determines that the plaintiff has had a substantial beneficial change in circumstances since the 1980 judgment, even after taking into consideration increases of cost of living as reflected in the expense listings in his affidavit.
 IV
Next, comparing the defendant's circumstances in 1980 versus 1995. The defendant was awarded unallocated alimony and support of $24,000 each year, reduced to $21,600 each CT Page 3373 year when the youngest child reaches 18, which has occurred. For comparison purposes $21,600 is considered alimony. The court found in 1980 that "the defendant, however, possesses no special occupational skills which would enable her to obtain any employment with reasonable prospects of above average salary or wage compensation." Hence, at minimum wage, $4.25 per hour times 40 hours times 52 weeks equals $8,840 of gross earning capacity, for a total alimony plus gross earning capacity of $30,440 in 1980. Alimony and earnings are taxable.
No tax is set forth in the 1980 affidavit or the memorandum of decision. Hence using the defendant's 1993 income tax return to estimate tax percentages for 1980, as modest income homeowners always have low gross to tax ratios. Her present gross (alimony, wages, rent) income is $33,105. Her present federal income tax is $2,824. The ratio, tax to gross income ($2,824 divided by $33,105) would be 8.5%. Therefore, 8.5% of gross plus earning capacity of $30,440, is $2,587 for tax. Her net income plus earning capacity for 1980 would be $27,583.
The defendant's projected gross income for 1995 is $35,672, including alimony. The Court finds that she is at the reasonable limit of her earning capacity, bearing in mind substantial medical problems with her lower limbs which limit the amount of time she can devote to labor.
The defendant reports in her affidavit for 1995, as deductions from income, Federal tax, Social Security tax, Medicare tax and Connecticut Income tax, a total of such deductions of $85 per week, $4,420 for the year. Her net income after taxes for 1995 therefore is $31,252 per annum. This is an increase in net annual income of only $3,417 over the net alimony and earning capacity attribution of $27,853 for 1980.
The defendant's expenses, per her 1995 affidavit are $39,572. Her family expenses in 1980 were $29,586. Offsetting (subtracting) the child support increment of the 1980 order, $2,400 per year, yields $27,186 per year as her expenses for 1980. Bearing in mind that the plaintiff's personal living expenses have increased by $22,000 per annum over the 15-year period, the defendant's increase in living expenses of approximately $12,500 is by any standard CT Page 3374 not on its face unreasonable. The Court finds from the evidence, and its analysis of the affidavit, that her expenses are in fact reasonable, although some economy should be able to be accomplished as concerns life insurance, which will be discussed later. Her present shortfall $31,252 net income versus $39,572 expenses, is $8,320 per annum.
The difference between the progress of the parties is that the plaintiff husband's increase in net income has substantially exceeded the increase in his living expenses, whereas the reverse has occurred with the defendant in that net income of the defendant wife has fallen far short of the reasonable increase of her living expenses. This results in a substantial surplus for the plaintiff and a substantial deficit for the defendant.
The defendant's liabilities have increased from $1,319 in 1980 to $11,860 in 1995, which is a modest increase over the period of fifteen years, and is a proper reflection of a fiscally prudent life style. The age of her vehicle, 1984 Saab; the deferring of needed repairs to the house, such as a dysfunctional furnace which needs replacement; and her personally doing maintenance work about the house and grounds all indicate unusual prudence in the handling of her financial affairs.
As to the defendant's assets. The 1980 affidavit reflects assets of $29,343.56. The 1995 affidavit reflects assets of $246,997. The significant difference is that the total equity in the home has increased from $54,000 in 1980 (see Decision 10/6/80, p 3) to $191,300 in 1995. Her one-half equity in 1980 was $36,000). The total fair market value of the house in 1980 was $126,875 (Decision 10/6/80, p. 3). The present value is $225,000, an increase of $98,775 over 15 years. Her present equity of $191,300 would be the result of several factors — the payment of $25,000 to the plaintiff from the sale of inherited property in Ireland; some monthly amortization of the mortgage; and the increase of real estate values, sporadic but gradual, over the past 15 years. The Court takes note of the fact that the cost of a substitute house or condominium has also increased over the years.
The plaintiff suggests that the defendant sell the CT Page 3375 house. Yet a sale of the house, after agent's commissions and any capital gains tax, accompanied by a substitute purchase, would not appear to leave the defendant in much better financial circumstances than she is in now. The house is described in the appraisal, Exhibit C, as average
condition, average location, and average cosmetic condition. The Court sees nothing extravagant in the present or continued occupancy of the house by the defendant.
The house provides feelings of both personal safety and reasonable comfort for the defendant, with friends and neighbors in this neighborhood in which she has lived for so many years, as well as an economic safety net. These are not insignificant matters for a lady of 57 1/2 years of age, whose only family relations in her lineage live in Ireland, and who also has significant medical problems with the mobility of her lower limbs. The Court rejects the contention that the defendant should sell the house.
The Court does note, however, that the expenditure of $50 per week to preserve the cash value/coverage on an ordinary life insurance policy of $100,000 on the plaintiff's life calls for some economy on the part of the defendant, as the coverage can be maintained by utilizing the cash value to pay the premiums or to purchase a paid-up life insurance policy of lesser value, thereby relieving some of the financial stress.
The Court finds that the defendant's financial circumstances have substantially deteriorated since the time of the original judgment in 1980.
The Court notes that though the plaintiff claims financial distress in 1991, 1992 and 1993, he was able to contribute $23,000, $14,052 and $16,604 respectively to his tax deferred savings, his Keough plan, in each of those years, albeit in part through the generosity of his present wife. Yet those funds do exist and provide liquid funds for him as needed, as they are at law his funds and may be utilized by him to reduce his personal voluntary indebtedness without payment of 10% federal penalty.
The Court does not credit the plaintiff's contention that his income will be substantially less in 1995 than it CT Page 3376 was for the prior 5 years when his personal gross income, after business expenses were between a high of $185,834 and a low of $149,926 in 1994. He has taken no steps to replace associates whom he claims left his affiliation in 1994. His earning capacity is as recorded and herein calculated in 1994. Conversely the Court does not treat his $141,000 of accounts receivable as a specific asset, as this should translate into income to be received. The Court does not attribute a sale value to the practice, as there is no evidence to that effect, and any such sale would deteriorate or eliminate future earned income.
In summary, the Court finds that the plaintiff's financial circumstances have changed, have increased substantially, since the time of the dissolution in 1980. The Court finds that the defendant's financial circumstances have changed substantially, have decreased substantially, since the time of the dissolution in 1980.
The Court finds that the plaintiff, on an after tax income versus expenses basis, is approximately $10,500 better off than he was in 1980. The Court finds that the defendant, on an after tax income versus expenses basis, is approximately $8,320 worse off than she was in 1980. The Court finds that the defendant can reduce the deficit by approximately $2600 by some economy, if she chooses, as concerns life insurance premiums.
The Court denies the plaintiff's motion to decrease or terminate alimony. The Court grants the defendant's motion to increase alimony. The Court increases the alimony of the defendant by the amount of $110 per week, $5,720 per year. Alimony shall now be in the amount of $27,320 per year, payable in the same time increments as was the prior order, semi-monthly, first and fifteenth of each month, $1,138.33 per payment. The Court makes this order effective as of the date of this judgment. The Court does not order the change in alimony to be retroactive to the date of the filing of the defendant's motion. The Court finds no unwarranted delay on the part of the plaintiff, finds that the defense of the 1992 motions and the taking of the appeal by him was in good faith, and of necessity consumed substantial funds for legal fees and expenses of litigation, and that retroactive applicability would under all the circumstances relevant thereto be inequitable. CT Page 3377
Lastly, as to the defendant's motion for appellate counsel fees. The defendant has submitted to the Court the itemized bill of Attorney Joel Ellis for representing her in the Supreme Court appeal Fahy v. Fahy, 227 Conn. 505, which resulted in the remand to this Court. The Court finds that the bill for services rendered, $6,350.00, is fair and reasonable. The Court accepts the stipulation of the parts to that effect, dated February 8, 1995.
"The test for the trier to apply upon an application for an allowance to prosecute an appeal in a divorce action is whether the wife is justified in taking the appeal and whether the resources of the parties are such as to require the husband to finance it." Thomas v. Thomas, 159 Conn. 477,489 (1970).
It is self-evident that those same principles would apply to the wife defending against an appeal. It would be near foolhardy for the prevailing party to not defend against an appeal unless, conceivably, the fallacy of the judgment was so clear that on its face the appeal was so frivolous as to be clearly subject to per curiam dismissal. Such appeals are rare indeed.
The Court finds that the wife, the defendant, was totally justified in defending against the appeal. Indeed, her position on the first issue of the appeal, "contemplation," was adopted by the Supreme Court in what may be properly described as a landmark decision. The fact that she did not prevail on the second issue of the appeal is without import. She was justified in defending against the appeal.
The second consideration is the resources of the parties. The defendant's significant liquid asset is the cash value of the life insurance. The Court's decision will expose that asset to be utilized in one fashion or another, at the option of the defendant, either to continue the premiums by deficit spending, by taking money from other needs; or to convert the cash value to paid-up coverage, or to consume the cash value by continuous yearly loans against cash value to support the present level of coverage. The only other liquid asset is a very modest pension plan. CT Page 3378
Conversely the plaintiff has accumulated a large sum in tax deferred savings, a pension plan of $340,000. The sum of $6,350 can be paid from these funds without significantly affecting the plaintiff's financial circumstances, present or future. Conversely, to require the defendant to pay these sums would implicate the efficacy of the order of this Court, requiring the utilization of more than one year's increase of alimony.
The Court grants the defendant's Motion for Attorney Fees to prosecute the Appeal of July 20, 1992 and orders that the plaintiff pay to the defendant the sum of six thousand three hundred and fifty dollars, said payment to be made within a period of ninety days from the date of this judgment. The Court denies the defendant's request that interest be paid on the amount of the award of counsel fees.
Finally, it should be noted that the finances of the parties, particularly those of the plaintiff, are complex, and the decision is made more complicated by the absence of a Court's finding of net income in 1980, and by the plaintiff's prudent and necessary filing of joint income tax returns. This is not an "ordinary" type of case. Fahyv. Fahy, supra, § P 517.
The parties did not present evidence to assist in establishing a starting point as concerns net income, or to segregate comparative net income, requiring the Court to engage in a complex series of calculations to arrive at a fair approximation of net income. Had the Court merely compared gross income to gross income, for the plaintiff $95,000 in 1980 versus $149,926 in 1994 and for the defendant (alimony plus earning capacity) of $30,440 in 1980 versus gross income of $35,672 in 1995, the result would be the same, resulting in the finding of change of circumstances. It is doubtful, however, that an award based only upon gross income versus gross income, or an award based upon a total disregard of income, net or gross, for want of an articulated record net starting point, or failure to separate spousal earnings would have any realistic prospect of arriving at a rational decision as to the dollar awarding of final orders in this case. CT Page 3379
Judgment enters for the defendant on her Motion For Modification and for the defendant on the plaintiff's Motion for Modification. Judgment enters for the defendant on her motion for the awarding of appellate counsel fees.
L. PAUL SULLIVAN, J.